233 N.J. Super. 129 (1989)
558 A.2d 61
CARYN MARIE JOHNSON, PLAINTIFF-APPELLANT,
v.
CAROLYN MARIE BRADBURY AND GARY TRENTON JOHNSON, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Submitted April 11, 1989.
Decided May 17, 1989.
*130 Before Judges ANTELL, DREIER and BROCHIN.
Loveland, Garrett, Russell & Young, attorneys for appellant (Joanne Mazza Weber, on the brief).
Smith & Kokes, attorneys for respondent Bradbury (Eric W. Smith, on the brief).
*131 Mott, Vernon and Mott, attorneys for respondent Johnson (Allen H. Vernon, Jr., on the brief).
The opinion of the court was delivered by ANTELL, P.J.A.D.
At the time of filing the complaint herein, plaintiff was 18 years old. She sues both her divorced parents for financial assistance to defray the cost of her college education. The suit against defendant Gary Johnson sounds in contract, based upon statements allegedly made by that defendant assuring plaintiff of a college education if she came to live with him and his second wife in Florida. The suit against defendant Carolyn Bradbury, plaintiff's mother, is grounded in common law principles fixing the obligation of a parent to meet the expense of higher education for a child. Plaintiff now appeals from an order dated September 21, 1988, dismissing her complaint as to defendant Bradbury, and an order dated October 17, 1988, dismissing the complaint as to defendant Johnson.
Plaintiff's parents were divorced in Florida on July 23, 1976. The final decree awarded custody of plaintiff to her mother and provided for support payments by her father in the amount of $125 per month. In 1977, the mother moved to New Jersey from Florida with plaintiff and an older daughter. Plaintiff's brother remained in Florida with the father.
Plaintiff, who was born in 1970, asserts that since she was 12 years old her father promised her a college education. She states that after she moved to New Jersey he "encouraged me to move to Florida to establish a residency in that State to reduce the cost of tuition." She accepted his offer and moved to her father's house in August 1987. Thereafter, difficulties developed between father and daughter, and plaintiff says she was compelled to leave. In the early spring of 1988 she returned to New Jersey to resume living with her mother, but was told that she was not welcome. Without any assistance from either of her parents she was, at the time of these *132 proceedings, supporting herself by working at a supermarket while completing her senior year at high school.

DEFENDANT JOHNSON
The dismissal order as to defendant Johnson, who was served in Florida, is based on the trial court's finding of a lack of personal jurisdiction. Rule 4:4-4(e), our "long-arm" rule, has been interpreted to permit service of process on a non-resident defendant "to the uttermost limits permitted by the United States Constitution." Avdel Corp. v. Mecure, 58 N.J. 264, 268 (1971). The ultimate question under the Fourteenth Amendment due process requirement is whether the non-resident has had "minimum contacts with [the forum state] such that the maintenance of the suit does not offend `traditional notions of fair play and substantial justice.'" International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95, 102 (1945) (quoting Milliken v. Meyer, 311 U.S. 457, 463, 61 S.Ct. 339, 343, 85 L.Ed. 278, 283 (1940)).
Originally conceiving that applicable principles permitted the bringing of suit in New Jersey, the Chancery Division first denied defendant's motion. However, on a motion for reconsideration the decision of the United States Supreme Court in Kulko v. California Superior Court, 436 U.S. 84, 98 S.Ct. 1690, 56 L.Ed.2d 132 (1978), was brought to its attention. Because it read that decision as mandating such a conclusion, it determined that plaintiff had not satisfied constitutional standards prerequisite to the exercise of jurisdiction by New Jersey courts over defendant and reversed its earlier determination.
In our view, the facts of Kulko are materially different from those hereof and did not require the result reached below. In Kulko, husband and wife, who resided in New York, separated. The wife moved to California, leaving their two children with the husband. After the wife obtained a divorce in Haiti, the couple's daughter, with the husband's consent, moved to California to reside with her mother. Some time later, without the *133 father's consent, the former wife brought the other child out also to live with her in California. The mother then brought suit under the long-arm jurisdiction of the California court to obtain child support payments from the father.
The California Supreme Court found that the Superior Court had properly exercised its jurisdiction under International Shoe Co. v. Washington, supra. It reasoned that because the father had caused an "effect" in that state by allowing his daughter to live with her mother there, it was "fair and reasonable" for the father to be subject to personal jurisdiction of the California courts to determine his responsibility for support. The United States Supreme Court reversed. It concluded that the circumstances of the case clearly rendered "unreasonable" California's exercise of personal jurisdiction. It observed that there was "no claim that appellant has visited physical injury on either property or persons within the State of California," and that the suit arose only from his "personal domestic relations." 436 U.S. at 96-97, 98 S.Ct. at 1699-1700, 56 L.Ed.2d 143-145.
We gather from the papers before us that defendant Johnson had been importuning plaintiff to return to Florida and live with him for approximately five years, from 1982 until August 1987 when she actually returned. Plaintiff asserts that during those years, relying on his promise, she structured her high school career around a program of college preparatory studies rather than along other lines which might be of more practical benefit to her in her present circumstances. In addition, she acted on her father's assurances of a college education by moving to Florida with the unforeseen consequence that by so doing she would be burning her bridges behind her in New Jersey.
The difference between these facts and those considered in Kulko is clear. If plaintiff is to be believed, defendant's conduct, which could be found to be "purposeful" within the sense of Shaffer v. Heitner, 433 U.S. 186, 216, 97 S.Ct. 2569, 2586, 53 L.Ed.2d 683, 705 (1977), affirmatively impacted within *134 New Jersey so as to supply the minimum contacts essential to the exercise of jurisdiction. See Landis v. Kolsky, 81 N.J. 430, 436 (1979). It remains to be determined factually what that conduct was. But depending on the trial court's view of the evidence, plaintiff's actions in selecting her high school curriculum and in uprooting herself from this state in consideration of her father's promise could be found to constitute "effects" in this state such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice. See Avdel Corp. v. Mecure, supra; Blessing v. Prosser, 141 N.J. Super. 548, 550 (App. Div. 1976).
Finally, giving full credit to plaintiff's allegations, as we must on a motion for summary judgment, her conduct in New Jersey could be found as the final acts necessary to the formation of a contract in this state. Filson v. Bell Tel. Labs., Inc., 82 N.J. Super. 185, 190 (App. Div. 1964). This too could be a factor in making the jurisdictional determination. Although the factual complex hereof, when fully developed, may ultimately dictate dismissal of the suit against Johnson, we do not perceive Kulko as presenting an impediment to the exercise of extra-territorial jurisdiction based on the present record.
Our recitation of the facts concerning defendant Johnson is largely based upon plaintiff's certification which speaks in conclusory terms and is sparse on details. It is unsaid, for example, how the critical communications took place between plaintiff and defendant, whether by telephone or correspondence or whether by face-to-face discussions. If by face-to-face discussions, there should be a finding as to where these were held.
Also lacking in the proofs before us are the specific details of what was said by each in their discussions, factually recited without recourse to conclusions. These matters, together with others which may be relevant to the question of personal jurisdiction, should be the subject of proofs and not left to conjecture. Accordingly, we will remand the matter as to *135 defendant Johnson to the Chancery Division for a plenary hearing into the jurisdictional facts. The Chancery Division is directed to state, among other pertinent matters, its findings and conclusions as to defendant's statements to plaintiff which may have served as an inducement for her to return to the State of Florida, where and how these statements were made, what actions by plaintiff were thereby induced, and whether their effects were such that the maintenance of plaintiff's suit in this state does not offend "traditional notions of fair play and substantial justice."

DEFENDANT BRADBURY
We turn to the order dismissing plaintiff's claim against defendant Bradbury. The question of parental obligation to assure a necessary education for children has been discussed in a line of New Jersey cases. Newburgh v. Arrigo, 88 N.J. 529 (1982); Khalaf v. Khalaf, 58 N.J. 63 (1971); Limpert v. Limpert, 119 N.J. Super. 438 (App. Div. 1972); Nebel v. Nebel, 99 N.J. Super. 256 (Ch. Div. 1968), aff'd o.b., 103 N.J. Super. 216 (App. Div. 1968); Jonitz v. Jonitz, 25 N.J. Super. 544 (App. Div. 1953); Cohen v. Cohen, 6 N.J. Super. 26 (App. Div. 1949); Sakovits v. Sakovits, 178 N.J. Super. 623 (Ch. Div. 1981); Ross v. Ross, 167 N.J. Super. 441 (Ch. Div. 1979); Schumm v. Schumm, 122 N.J. Super. 146 (Ch. Div. 1973); Hoover v. Voightman, 103 N.J. Super. 535 (Cty. Ct. 1968). In its most recent treatment of the subject our Supreme Court stated the following:
In general, financially capable parents should contribute to the higher education of children who are qualified students. In appropriate circumstances, parental responsibility includes the duty to assure children of a college and even of a postgraduate education such as law school. [Newburgh, supra, 88 N.J. at 544].
The trial court, however, conceived that the duty of a parent to provide a child with higher education obtains only in matrimonial cases where at least one of the disputants is a custodial parent. It further opined that it should refrain from imposing its values upon the litigants in so sensitive a context.
*136 In our view, the parental obligation is not as limited as the court conceived. It is enforceable not only at the instance of a custodial parent against a non-custodial parent, but at the child's instance as well. Enforcement of the right by the child is not necessarily defeated by the fact that she has reached the age of majority. While it is true, as a general proposition, that parents are not under a duty to support children after majority, even then, "in appropriate circumstances, the privilege of parenthood carries with it the duty to assure a necessary education for children." Newburgh, supra, 88 N.J. at 543. Nor, in our view, is the right defeated merely because both parents are united in their determination to declare the child emancipated. The guidelines for the resolution of contests such as this were elaborated in the following language of Newburgh, a case in which the court considered the claim of a decedent's 20-year old son for the cost of higher education against the decedent's estate:
In evaluating the claim for contribution toward the cost of higher education, courts should consider all relevant factors, including (1) whether the parent, if still living with the child, would have contributed toward the costs of the requested higher education; (2) the effect of the background, values and goals of the parent on the reasonableness of the expectation of the child for higher education; (3) the amount of the contribution sought by the child for the cost of higher education; (4) the ability of the parent to pay that cost; (5) the relationship of the requested contribution to the kind of school or course of study sought by the child; (6) the financial resources of both parents; (7) the commitment to and aptitude of the child for the requested education; (8) the financial resources of the child, including assets owned individually or held in custodianship or trust; (9) the ability of the child to earn income during the school year or on vacation; (10) the availability of financial aid in the form of college grants and loans; (11) the child's relationship to the paying parent, including mutual affection and shared goals as well as responsiveness to parental advice and guidance; and (12) the relationship of the education requested to any prior training and to the overall long-range goals of the child. [Id. at 545].
Obviously, the foregoing criteria must be carefully applied by the trial court in light of a wide range of relevant facts and circumstances. The undertaking cannot be accomplished except after a presentation of all the evidence through direct and cross-examination and until the trial court has had an opportunity to observe the demeanor of the witnesses. The issue is not *137 one which is appropriate for disposition on a motion for summary judgment. It implicates "highly significant policy considerations," and for this reason should not be decided on less than a full record. Jackson v. Muhlenburg Hospital, 53 N.J. 138, 142 (1969).
As we wrote in McGowan v. Borough of Eatontown, 151 N.J. Super. 440 (App. Div. 1977), by reversing the summary judgments entered below we do not imply that a plenary hearing must necessarily result in a material issue of fact.
We only indicate the necessity in this case of a judge making the legal determinations on which the parties' rights hinge on a full and complete record. If, on a plenary hearing, the judge finds no factual issue present or finds a moving party is entitled to judgment as a matter of law, then judgment should be entered accordingly. [Id. at 446].
The orders under review are reversed and the matter is remanded for further proceedings consistent with this opinion.