765 A.2d 271 (2001)
336 N.J. Super. 492
Abbey L. SHARP, Plaintiff-Respondent, Cross-Appellant,
v.
Gregory K. SHARP, Defendant-Appellant, Cross-Respondent.
Superior Court of New Jersey, Appellate Division.
Argued December 12, 2000.
Decided January 23, 2001.
*272 David Perry Davis, Trenton, argued the cause for appellant.
Scott J. Wortman, West Palm Beach, FL, argued the cause for respondent (Lentz & Gengaro, West Orange, attorneys; Mr. Wortman, of counsel and on the brief).
Before Judges STERN, COLLESTER and FALL.
The opinion of the court was delivered by FALL, J.A.D.
The primary issue in this appeal is whether the facts contained in this record support a finding of in personam jurisdiction of the Family Part over the California-resident father in an action by the New Jersey-resident custodial mother seeking the allocation of the college costs of the parties' unemancipated daughter. Because the parties were divorced in California, child support was established in California and subsequently modified through interstate proceedings in California, and the father has insufficient minimum contacts with this State, we conclude the Family Part lacks personal jurisdiction over the father and cannot entertain an action seeking to impose an obligation upon him for the college costs of the child.
*273 Defendant, Gregory K. Sharp, appeals from entry of an order on November 5, 1999, denying his motion for dismissal. Defendant had moved to dismiss, on jurisdictional grounds, the application of plaintiff, Abbey L. Sharp, that sought an order compelling defendant to contribute to the college costs of the parties' unemancipated daughter, Jennie Suzanne Sharp.
The parties were married in California on August 18, 1973, separated in September 1981, and were divorced in the State of California by judgment of the Superior Court of California, San Bernardino County, on or about February 25, 1982. One child was born of the marriage, Jennie Suzanne Sharp, on March 15, 1980. The California judgment of divorce incorporated the parties' marital settlement agreement, which vested custody of Jennie with plaintiff and required defendant to pay plaintiff the sum of $50 per month in child support, "continuing until the child reaches her majority, marries, dies, becomes self-supporting, or further order of the Court, whichever first occurs." The judgment and agreement are silent on the issue of responsibility for the future college costs of the child. In June 1983, plaintiff and Jennie moved to New Jersey, where they have since lived. Defendant remains a resident of California.
Defendant's child support contributions were increased progressively over the years through proceedings initiated by plaintiff under the Revised Uniform Reciprocal Enforcement of Support Act (RURESA), N.J.S.A. 2A:4-30.1 to -30.64, reaching the sum of $475 per month in 1993. Jennie and defendant maintained a strong relationship over the years and she would spend each summer with defendant in California. In September 1998 defendant ceased paying child support for Jennie.
Jennie graduated from high school in June 1998 and began her freshman year of college in August 1998 at the University of Massachusetts, at a cost of approximately $14,204 annually. In a letter to defendant dated July 23, 1998, plaintiff requested defendant to contribute to Jennie's college costs by paying fifty-percent thereof through an increase in his monthly child support by $700. The issue of Jennie's college costs was not resolved by the parties.
On or about August 3, 1999, plaintiff filed a motion in the Family Part, returnable September 10, 1999, seeking an order compelling defendant to contribute to Jennie's college costs.[1] The motion was received by defendant by certified mail. Defendant, through a letter to plaintiff's counsel by defendant's California counsel dated August 4, 1999, claimed the Family Part lacked jurisdiction over him. However, no response to the motion was filed by defendant with the Family Part.
At the September 10, 1999 motion return date, the motion judge noted defendant had not filed any response to the motion. The judge reserved decision and ordered both parties to submit financial information consisting of "two years tax returns, W-2's and three most recent paystubs." An order prepared by the court was executed on September 14, 1999, memorializing the September 10, 1999 decision, the court reserving "its decision on the issue of whether or not Defendant must contribute to the college expenses of the parties' daughter, Jennie Suzanne Sharp."
Thereafter, the parties entered into settlement negotiations that were unsuccessful. On October 20, 1999, defendant filed a motion seeking an order establishing that the Family Part lacked jurisdiction over him to consider plaintiff's college-contribution *274 application. In support thereof, defendant certified that with the exception of three brief vacations, he has never been to New Jersey and has had no other contacts with this State. Defendant stated his "child support obligation has always been enforced, collected and modified in California through the interstate child support collection system." Defendant further noted that prior to plaintiff's motion, there were no New Jersey court proceedings between the parties.
Plaintiff filed a cross-motion, seeking an order dismissing defendant's motion and assessing counsel fees and costs against him.
The motions were argued on November 5, 1999. The motion judge construed defendant's motion to dismiss as a motion for reconsideration of the September 14, 1999 order, pursuant to R. 4:49-2. The judge then found defendant's motion to be filed out-of-time stating, in pertinent part:
[The] Court would note that under the section of 4:49-2 [that] provides that any affirmative defense which ... has been waived, is not subject to revival by being raised in a motion for reconsideration. The Court will note that when this motion was initially filed, there was no affirmative defense raised by way of the jurisdictional issue. That was the appropriate time to bring it up. It is only on the motion for reconsideration that [counsel for defendant] now asserts an affirmative defense of lack of jurisdiction.... That defense is therefore waived.... And the motion for reconsideration should have been filed again some time before October 18th. The motion was filed on October 24th, well out of time and, therefore, will be denied.
The judge also denied that portion of plaintiff's cross-motion seeking imposition of counsel fees and costs.
By letter to the trial court dated November 15, 1999, defendant submitted, through counsel, the financial information required by the September 14, 1999 order. Without oral argument or a hearing, the motion judge entered an order on December 7, 1999, requiring each party to contribute fifty-percent of Jennie's college costs, after application of all financial aid received by her. On December 23, 1999, defendant filed a notice of appeal from the orders entered.
On appeal, defendant presents the following arguments for our consideration:
POINT I
THE TRIAL COURT ERRED BY FAILING TO DISMISS THE MATTER AS NEW JERSEY LACKS JURISDICTION OVER DEFENDANT.
A. New Jersey lacks in personam jurisdiction over defendant.
B. Defendant did not waive this defense.
C. The trial Court erred by considering defendant's October 20 motion to dismiss as a motion for reconsideration and by thereafter applying the 20 day time limit to a motion to reconsider an interlocutory order.
Plaintiff cross-appealed from denial of her motion for imposition of counsel fees and costs.
Initially, we conclude the motion judge erred in treating defendant's motion to dismiss on jurisdictional grounds as an untimely motion for reconsideration, pursuant to R. 4:49-2, of the September 14, 1999 order. Even assuming the applicability of R. 4:49-2 to defendant's motion, the time prescription of this rule applies only to final judgments and final orders. In the September 14, 1999 order, the motion judge specifically reserved decision "on the issue of whether or not Defendant must contribute to the college expenses of the parties' daughter[.]" A motion to amend or reconsider interlocutory orders may be made at any time until entry of the final order. See Johnson v. Cyklop Strapping Corp., 220 N.J.Super. 250, 257-58, 531 A.2d 1078 (App.Div.1987), certif. denied, 110 N.J. 196, 540 A.2d 189 (1988). Moreover, *275 a motion asserting lack of personal jurisdiction "shall be raised by motion within 90 days after service of the answer, provided that defense has been asserted therein[.]" R. 4:6-3. Here, since no requisite complaint was filed by plaintiff, no answer was due. Even if the ninety-day time period were deemed to run from the due date of defendant's answer to plaintiff's motion, it is clear that defendant's motion to dismiss was timely, since it was filed well within ninety days of the date plaintiff filed her motion with the court. Accordingly, defendant did not waive his right to assert a lack of personal jurisdiction defense to plaintiff's application, see R. 4:6-7, and the failure of the motion judge to reach the merits of defendant's jurisdictional motion was error. See Byrnes v. Landrau, 326 N.J.Super. 187, 191-93, 740 A.2d 1113 (App.Div.1999) (holding that while defense of lack of in personam, jurisdiction may be waived, a defendant may raise such defense either by motion before answering the complaint, or by answer and then by motion within ninety days after service of the answer, and that when a question in personam jurisdiction is raised, procedural rules must be viewed with an eye toward consideration of that issue on the merits), certif. denied, 163 N.J. 78, 747 A.2d 286 (2000).
It is fundamental "that a valid judgment imposing a personal obligation or duty in favor of the plaintiff may be entered only by a court having jurisdiction over the person of the defendant." Kulko v. California Superior Court, 436 U.S. 84, 91, 98 S.Ct. 1690, 1696, 56 L.Ed.2d 132, 140 (1978). In addition to the presence of reasonable notice to the defendant of an action, the existence of personal jurisdiction turns on "a sufficient connection between the defendant and the forum State to make it fair to require defense of the action in the forum." Ibid., 436 U.S. at 91, 98 S.Ct. at 1696, 56 L.Ed.2d at 141; see also International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95, 102 (1945). Moreover, the "minimum contacts" test "is not susceptible of mechanical application; rather, the facts of each case must be weighed to determine whether the requisite `affiliating circumstances' are present." Kulko, supra, 436 U.S. at 92, 98 S.Ct. at 1697, 56 L.Ed.2d at 141; see also Hanson v. Denckla, 357 U.S. 235, 246, 78 S.Ct. 1228, 1235, 2 L.Ed.2d 1283, 1293 (1958); Katz v. Katz, 310 N.J.Super. 25, 30 31, 707 A.2d 1353 (App. Div.1998). As we have noted:
The ultimate question under the Fourteenth Amendment due process requirement is whether the non-resident has had "minimum contacts with [the forum state] such that the maintenance of the suit does not offend `traditional notions of fair play and substantial justice.'" International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95, 102 (1945) (quoting Milliken v. Meyer, 311 U.S. 457, 463, 61 S.Ct. 339, 343, 85 L.Ed. 278, 283 (1940)).
[Johnson v. Bradbury, 233 N.J.Super. 129, 132, 558 A.2d 61 (App.Div.1989).]
In Jaworowski v. Kube, 276 N.J.Super. 474, 478, 648 A.2d 261 (App.Div.1994), we further explained the standard for evaluating whether personal jurisdiction is present, as follows:
As we read Kulko, it reaffirms long-standing due process principles by holding that in order to sustain the forum's state exercise of jurisdiction in a support action, the non-custodial parent's contacts with that state must consist of or be based on conduct by which he purposefully avails himself of the privilege of conducting activities there and of the benefits and protection of its laws.

[(Citations omitted).]
In Johnson, supra, an adult, age eighteen child filed a complaint in New Jersey, suing both her divorced parents for financial assistance to defray the cost of her college education. 233 N.J.Super. at 131, 558 A.2d 61. The child's parents were divorced in Florida in 1976 when plaintiff was age six. Ibid. The Florida decree awarded custody of plaintiff to her mother *276 and required her father to pay child support. Ibid. In 1977, the mother moved to New Jersey with plaintiff, while the father remained in Florida. Ibid. In her complaint, plaintiff asserted that since she was age twelve, her father promised her a college education, and encouraged plaintiff to move to Florida to establish a residency there to reduce the cost of college tuition. Ibid. In 1987, the plaintiff accepted his offer and moved to Florida. Ibid. Difficulties between the plaintiff and her father occurred and, in 1988, the plaintiff returned to New Jersey to resume living with her mother; however, plaintiff was told by her mother that she was not welcome. Ibid.
The father was served with the plaintiff's suit in Florida; however, the trial court granted the father's motion to dismiss based upon a finding of a lack of personal jurisdiction. Id. at 132, 558 A.2d 61. In Johnson, we distinguished the facts from those in Kulko, as follows:
The difference between these facts and those considered in Kulko is clear. If plaintiff is to be believed, defendant's conduct, which could be found to be "purposeful" within the sense of Shaffer v. Heitner, 433 U.S. 186, 216, 97 S.Ct. 2569, 2586, 53 L.Ed.2d 683, 705 (1977), affirmatively impacted within New Jersey so as to supply the minimum contacts essential to the exercise of jurisdiction. See Landis v. Kolsky, 81 N.J. 430, 436, 409 A.2d 276 (1979). It remains to be determined factually what that conduct was. But depending on the trial court's view of the evidence, plaintiff's actions in selecting her high school curriculum and in uprooting herself from this state in consideration of her father's promise could be found to constitute "effects" in this state such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice. See Avdel Corp. v. Mecure, [58 N.J. 264, 277 A.2d 207 (1971)]; Blessing v. Prosser, 141 N.J.Super. 548, 550, 359 A.2d 493 (App.Div.1976).
[Johnson, supra, 233 N.J.Super. at 133-34, 558 A.2d 61.]
We reversed the dismissal of the action against the father, and remanded for a plenary hearing on the jurisdictional issue. Id. at 134-35, 558 A.2d 61.[2]
In Katz, supra, we concluded the former husband had insufficient minimum contacts with this State to establish personal jurisdiction over him in his former wife's suit seeking reimbursement of the proceeds from a custodial account, withdrawn by the husband to pay for their daughter's college education. 310 N.J.Super. at 31, 707 A.2d 1353. There, we determined the former husband did not have sufficient minimum contacts because he had not acted in a manner by which he purposefully availed himself of the privilege of conducting activities within this State, even though he had resided in New Jersey for a period seventeen years previously; the parties were married in New Jersey in 1968; he maintained a license to practice law in New Jersey, though not eligible to practice law here; and he had a small share in a limited partnership that, among all its holdings nation-wide, owned two buildings in New Jersey. Id. at 32-33, 707 A.2d 1353. We concluded that "[w]hatever ties he may have had with this State have evaporated over the years and New Jersey's power to exercise personal jurisdiction over him has similarly disappeared." Id. at 32, 707 A.2d 1353. Here, defendant has had far *277 fewer contacts with New Jersey than did Mr. Katz.
Effective March 5, 1998, the Uniform Interstate Family Support Act (UIFSA), N.J.S.A. 2A:4-30.65 to -30.123, replaced RURESA as the statute governing the interstate establishment, modification, and enforcement of child support, that "provides a comprehensive framework for dealing with the jurisdictional problems at hand." Peace v. Peace, 325 N.J.Super. 122, 127, 737 A.2d 1164 (Ch.Div.1999). Like New Jersey, California has also adopted UIFSA and codified it in its state statutes. Cal.Fam.Code §§ 4900 to 4976 (West 2000). "Congress mandated that, by January 1, 1998, every state must adopt UIFSA, including any amendments, to provide unity and structure in each state's approach to the modification and enforcement of child support orders. 42 U.S.C.A. § 666(f)." Youssefi v. Youssefi, 328 N.J.Super. 12, 20, 744 A.2d 662 (App.Div. 2000).
N.J.S.A. 2A:4-30.65 provides that a "child support order" can cover a child who has attained the age of majority but is considered unemancipated, and defines a "support order" as an order "for the benefit of a child, ... which provides for monetary support, health care coverage, arrearages, or reimbursement, and may include related costs and fees, interest, income withholding, attorney's fees, and other relief."
In New Jersey, college costs and child support for an unemancipated child are generally considered as "two discrete yet related obligations imposed on parents." Hudson v. Hudson, 315 N.J.Super. 577, 584, 719 A.2d 211 (App.Div.1998); see also Raynor v. Raynor, 319 N.J.Super. 591, 613-14, 726 A.2d 280 (App.Div. 1999) (noting the inter-relationship between college costs and a continuing child-support obligation when determining the obligations of parents). Clearly, in New Jersey, the duty of parental support may include responsibility for the higher education costs of unemancipated children. Kiken v. Kiken, 149 N.J. 441, 449-50, 694 A.2d 557 (1997).
UIFSA contains a specific long-arm provision, N.J.S.A. 2A:4-30.68, entitled "Personal jurisdiction over nonresidents[,]" which provides:
In a proceeding to establish, enforce, or modify a support order or to determine parentage, a tribunal of this State may exercise personal jurisdiction over a nonresident individual or the individual's guardian or conservator if:
a. the individual is personally served with a summons or notice within this State;
b. the individual submits to the jurisdiction of this State by consent, by entering a general appearance, or by filing a responsive document having the effect of waiving any contest to personal jurisdiction;
c. the individual resided with the child in this State;
d. the individual resided in this State and provided prenatal expense or support for the child;
e. the child resides in this State as a result of the acts or directives of the individual;
f. the individual engaged in sexual intercourse in this State and the child may have been conceived by that act or intercourse; or
g. there is any other basis consistent with the constitutions of this State and the United States for the exercise of personal jurisdiction.
The corresponding provision in California's UIFSA enactment is, essentially, identical. See Cal.Fam.Code § 4905 (West 2000).
Here, all prior child support orders have been issued by the California courts, initially in the divorce action, and then through RURESA proceedings. UIFSA has engrafted into our child-support jurisprudence the concept of "continuing, exclusive jurisdiction," which establishes which forum has subject-matter jurisdiction over *278 the issue of child support. N.J.S.A. 2A:4-30.72. Where only one tribunal has issued a child support order, that tribunal controls and it has continuing exclusive jurisdiction over the issue of child support. N.J.S.A. 2A:4-30.74(a); see also N.J.S.A. 2A:4-30.72(d) (requiring New Jersey courts to recognize the continuing, exclusive jurisdiction of the tribunal of another state which has issued an interstate child support order).
Our careful review of this record discloses that the Family Part did not have personal jurisdiction over defendant. Moreover, none of the prerequisites for personal long-arm jurisdiction contained in N.J.S.A. 2A:4-30.68 are present.[3] Unlike Johnson, supra, 233 N.J.Super. at 133-34, 558 A.2d 61, there is nothing in the record to support an allegation, or conclusion, that defendant's conduct caused an "effect" in New Jersey sufficient to constitute the requisite "minimum contacts." Moreover, Johnson was decided prior to the adoption of UIFSA, under which it is clear that California has continuing, exclusive subject-matter jurisdiction over the issue of child support. Even if the principles of law contained in UIFSA were deemed inapplicable to an application to determine an allocation of parental responsibility for the college costs of an unemancipated child, we conclude defendant has insufficient "minimum contacts" with New Jersey to assert personal jurisdiction over him.
Plaintiff's reliance on the cases of Black v. Walker, 295 N.J.Super. 244, 684 A.2d 1011 (App.Div.1996) and Blum v. Ader, 279 N.J.Super. 1, 652 A.2d 176 (App.Div.1994) is misplaced. Both of those cases involved choice-of-law issues, with no prior out-of-state child support orders.
We note that pursuant to the two-state procedures outlined in UIFSA, plaintiff may institute an action in New Jersey against defendant seeking contribution toward the college costs of the child, with New Jersey acting as the "initiating state" and California as the "responding state." See N.J.S.A. 2A:4-30.73(a) and -30.80(a).
On the cross-appeal, R. 5:3-5(c) permits "the court in its discretion" to make an award of counsel fees. We find nothing in the record to support a conclusion that the motion judge abused his discretion in declining to award plaintiff counsel fees. This is particularly true in light of our reversal of the trial court's denial of defendant's motion to dismiss.
In summary, we reverse the trial court's denial of defendant's motion to dismiss plaintiff's application, and remand for entry of an order granting defendant's motion and dismissing plaintiff's application. We affirm the trial court's decision declining to award counsel fees to plaintiff.
NOTES
[1] The record presented does not contain a complaint. Upon inquiry at argument, the parties informed this court that a complaint was not filed; rather, the motion filed by plaintiff was docketed in the Family Part as a non-dissolution case-type. This procedure is clearly inappropriate and contrary to R. 4:2-2, which states that "[a] civil action is commenced by filing a complaint with the court[,]" and R. 5:4-2(a), requiring the filing of a complaint to commence an action in the Family Part.
[2] In Johnson, supra, the trial court had also dismissed the action against the mother on the basis that the duty of a parent to provide a child with a college education required at least one of the parties to be a custodial parent. 233 N.J.Super. at 135, 558 A.2d 61. We also reversed that ruling, concluding that "[e]nforcement of the right by the child is not necessarily defeated by the fact that [the child] has reached the age of majority[,]" or "merely because both parents are united in their determination to declare the child emancipated." Id. at 136, 558 A.2d 61. We remanded for application of the relevant-factors test contained in Newburgh v. Arrigo, 88 N.J. 529, 545, 443 A.2d 1031 (1982). Id. at 136-37, 558 A.2d 61.
[3] In light of our holding, we have no occasion here to reach the issue of whether meeting one or more of the long-arm prerequisites enumerated in N.J.S.A. 2A:4-30.68 for the exercise of in personam jurisdiction would, per se, satisfy the constitutional mandate of sufficient "minimum contacts" for the exercise of such jurisdiction.