908 A.2d 1273 (2006)
388 N.J. Super. 442
Jeffrey ROBERTS, Plaintiff,
v.
Donna ROBERTS, Defendant.
Superior Court of New Jersey, Chancery Division, Family Part, Mercer County.
Decided April 7, 2006.
*1274 John A. Hartmann, Princeton, for plaintiff (Pellettieri, Rabstein and Altman, attorneys).
Frances M. Merritt, Princeton, for defendant.
OSTRER, J.S.C.
The pendente lite motion and cross-motion require the court to apply the Uniform Gifts to Minors Act ("UGMA"), N.J.S.A. 46:38-13 to 41, and the Uniform Transfers to Minors Act ("UTMA"), N.J.S.A. 46:38A-1 to -57. Specifically, may a parent-custodian be compelled to use custodial assets to defray private secondary school costs? The court concludes that the custodian's exercise of discretion is entitled to the same respect accorded a *1275 trustee, and that, under the circumstances of this case, the court shall not override the custodian's refusal to use UGMA or UTMA assets. The court reaches this conclusion without deciding whether the parents in this case would be deemed obliged to pay for the child's schooling from their own funds.
BACKGROUND AND FACTS
The parties were married on March 1, 1980. Mr. Roberts filed a complaint for divorce on September 1, 2004. The parties' fourteen-year-old son, Luke began attending The Studio, a private school designed to assist children suffering from dyslexia, in January 2004. In November 2005, the parties agreed through counsel to have Luke evaluated by an educational specialist. Deardra M. Rosenberg, M.A., LDT/C submitted an evaluation stating that Luke's test results showed some signs of dyslexia and that he would benefit from additional assistance in school.
At issue in this motion are common stocks held by Mr. Roberts as custodian for Luke under the Uniform Gifts to Minors Act and the Uniform Transfers to Minors Act. The gifts were made by Luke's paternal grandfather under the New Jersey UGMA and UTMA. The motions regarding Luke's education have been pending since the fall. However, over several months of negotiation, the parties have resolved many of the past differences. They agree that Deardra Rosenberg's $1500 in fees for Luke's educational testing should be shared equally and accounted for at the time of disbursement of net proceeds from the sale of the marital home. They will also cooperate in filing joint tax returns for 2004 and 2005 and apply the tax refund to Luke's tuition expenses. They further agree that Luke should remain at The Studio throughout high school.
However, the parties disagree about how to pay for Luke's remaining tuition expenses. Mr. Roberts seeks an order directing that Luke Roberts' remaining tuition expenses through his anticipated graduation in 2009 be shared equally by the parties from their personal assets. Ms. Roberts proposes that the remainder of Luke's tuition expenses be paid one third from Luke's stock holdings, and one third by each party. Each party seeks counsel fees and costs.
At the court's request, Mr. Roberts' submitted a certification in advance of oral argument confirming that all of Luke's stock holdings were held under either the UGMA or the UTMA. Also, all gifts designated New Jersey law.
DISCUSSION
The only remaining issue regarding Luke's education is how to pay for it. The crux of the dispute is whether this court should compel Mr. Roberts, as custodian, to liquidate stocks held under the UGMA and UTMA. Ms. Roberts proposes that she, Mr. Roberts, and Luke's custodial account bear remaining tuition in equal shares. Mr. Roberts resists tapping into the custodial assets, stating that he and Ms. Roberts have the financial capacity to pay, it should not be Luke's responsibility to pay, and it would be a conflict of interest for him to use the custodial assets to defray costs that he would otherwise bear. He suggests that he and his wife share equally in the responsibility to pay Luke's remaining tuition.
The court concludes that it should not override the custodian's judgment and invade the custodial assets. Nonetheless, the court is unwilling pendente lite to allocate how tuition will be paid through 2009, particularly since the parties have agreed to utilize anticipated tax refunds, which presumably will address short term needs.
The court declines to compel use of the UGMA and UTMA assets. First, under *1276 the UGMA and UTMA as construed by our courts, it is uncertain whether UGMA or UTMA assets may be used for the child's tuition under the circumstances of this case. However, the court need not resolve that issue because, more importantly, Ms. Roberts has failed to establish the grounds for overriding Mr. Roberts's decision as custodian. The court will discuss these points in turn.
The court in Cohen v. Cohen, 258 N.J.Super. 24, 609 A.2d 57 (App.Div.), certif. denied, 130 N.J. 596, 617 A.2d 1219 (1992), addressed the limitations on the use by a parent-custodian of the assets held under the UGMA and UTMA.[1] The court held that such assets may not be used to fulfill a financially able parent's support obligation.
We hold that despite the broad language of the statute purporting to confer wide discretion on the custodian, a custodian who is also a parent cannot properly use assets of a UGMA account to defray the parent's legal obligations to a child if the parent is financially able to support the child.
[Id. at 30-31, 609 A.2d 57].
In reaching that conclusion, the court affirmed a trial court decision that compelled a mother to reimburse her daughter for withdrawals from a UGMA account that were used for the child's living expenses, including clothes, food, shoes, dry cleaning bills, medical insurance and doctors' services. Also inappropriate were withdrawals to reimburse the mother's attorneys fees, incurred in connection with her custody dispute with the child's father. The daughter did not contest the custodian's use of UGMA assets for camp and schools.
In reaching its conclusion, the court construed N.J.S.A. 46:38-27(b), which by its plain language grants the custodian broad discretion.
The custodian shall . . . expend on behalf of the minor, so much of or all the custodial property as the custodian deems advisable for the support, maintenance, education, general use and benefit of the minor in the manner . . . and to the extent that the custodian in his absolute discretion deems suitable and proper. . . .
[Ibid.]
However, referring to persuasive out-of-state authority construing the uniform law of their states, the Cohen court noted that a custodian of an UGMA account may nonetheless not pay, or reimburse himself for expenditures that he was "legally obligated to make from . . . own funds for the benefit of the minor who is the beneficiary of the custodial account." Cohen v. Cohen, supra, 258 N.J.Super. at 29-30, 609 A.2d 57.
The UTMA includes language that appears to expressly limit the use of custodial funds to defray a parent's basic obligation of support, but that is not the drafters' intention. Section 34 of the New Jersey law states: "A delivery, payment or expenditure under R.S. 46:38A-32 or R.S. 46:38-33 is in addition to, not in substitution for, and does not affect any obligation of a person to support the minor." N.J.S.A. 46:38A-34. See also Cohen v. Cohen, supra, 258 N.J.Super. at 31, n. 3, 609 A.2d 57 (referencing section 34). However, section 34 of the New Jersey lawsection 14(c) of the Uniform Law was apparently designed to address the possible treatment of UTMA funds as income of the custodian-parent if used for legally obligated support.

*1277 [N]ew subsection (c) has been added to specify that distributions or expenditures may be made for the minor without regard to the duty or ability of any other person to support the minor and that distributions or expenditures are not in substitution for, and shall not affect, the obligation of any person to support the minor.
[National Conference of Uniform Law Commissioners, Uniform Transfers to Minors Act, Comment to Section 14 (1996)].
The Commissioners expressly declined to prohibit use of custodial property for legally obligated support.
Other possible methods of avoiding the attribution of custodial property income to the person obligated to support the minor would be to prohibit the use of custodial property or its income for that purpose, or to provide that any such use gives rise to a cause of action by the minor against his parent to the extent that custodial property or income is so used. The first alternative was rejected as too restrictive, and the second as too cumbersome.
[Ibid.]
Thus, the prohibition of using UTMA custodial funds to defray a parent's legal support obligation derives not from the UTMA, but from the general principle that "the estate of a minor may not be used for his support and maintenance if those who are legally responsible for the minor have sufficient funds to enable them to fulfill their responsibilities." Cohen v. Cohen, supra, 258 N.J.Super. at 30, 609 A.2d 57. The property of a minor held in a custodial account is indefeasibly granted to that child. N.J.S.A. 46:38-24 (stating that transfer is irrevocable and property is indefeasibly vested in the minor, subject to the custodian's powers outlined in the act).
The Cohen court qualifies that the limitation of use of a minor's estate applies only "if the parent is financially able." Id. at 31, 609 A.2d 57. A parent's support obligation adapts to the parent's ability to pay under the Child Support Guidelines. See generally Child Support Guidelines, Appendix IX-A to R. 5:6A. It is unclear whether Cohen would allow invasion of custodial funds when a parent is temporarily unable to pay for tuition, inasmuch as temporary reductions in income generally do not adjust a parent's support obligation. See Innes v. Innes, 117 N.J. 496, 504, 569 A.2d 770 (1990).
The Child Support Guidelines regard private school tuition as an extraordinary expense, but under appropriate circumstances these expenses may be approved by the court. Child Support Guidelines, Appendix IX-A, ¶ 9(d) to R. 5:6A. The Cohen court did not expressly address whether, if such expenses are included within a parent's support obligation, they are necessarily ineligible for UGMA or UTMA funds. The court must consider several factors in determining whether a non-custodial parent should be required to contribute to a child's private school expenses. Hoefers v. Jones, 288 N.J.Super. 590, 611-12, 672 A.2d 1299 (Ch.Div.1994), aff'd, 288 N.J.Super. 478, 672 A.2d 1177 (App.Div.1996). These include the non-custodial parent's ability to pay; the parents' own past attendance; whether the child attended pre or post divorce; whether the parties previously agreed to send the child to private school; the religious background of the parties and children, which relates to parochial school cases; the special educational, psychological, or additional needs of the child and whether the private school meets those needs; whether it is in the child's best interests, generally, to attend or continue to attend the private school; whether one party has already been given the right to select the child's school; whether *1278 the enrollment by the residential parent was reasonable; whether private school is authorized by the child support guidelines; the child's abilities; the respective parents' past or present involvement in the child's education; and whether the custodial parent's current views on private education are consistent with past views. Ibid.
However, even if a court mandated payment of private secondary school costs, custodial funds conceivably would be available to assist, assumingunlike in this casethe custodian believed funds should be used for that purpose. Conceivably, a court under a Hoefers v. Jones analysis could determine that, in addition to the parents, the child shall also contribute to the private school costs. Although the extent of a child's resources is not a factor explicitly mentioned in that case, it is a factor to be considered in the analogous determination of parents' obligation pay for college. See Newburgh v. Arrigo, 88 N.J. 529, 545, 443 A.2d 1031 (1982) (stating that the court should consider, among other factors, "the financial resources of the child"). Newburgh v. Arrigo specifically addressed consideration of assets of the child "held in custodianship or trust," presumably contemplating possible use of those funds in appropriate cases, even though the parents would otherwise be obliged to pay the balance of costs. Ibid.
Also, a determination under Hoefers v. Jones is made when one parent has already decided, voluntarily, that a child should attend a private school, but cannot persuade the other that the child should do so, or cannot agree about the sharing of the tuition. The court is unaware of any case in which a court has compelled parents to send a child to private school when neither believes it is appropriate. That is not to dismiss the possibility that, under certain circumstances, a child or a child's representative conceivably could compel unwilling but financially able parents to pay for all or part of the cost of a private secondary education, consistent with their general obligation of support, particularly if the child has special needs that cannot be adequately addressed in the public schools. Compare Johnson v. Bradbury, 233 N.J.Super. 129, 558 A.2d 61 (App.Div. 1989) (child compels both unwilling parents to assist in defraying college expenses).
The court need not decide this issue, because even if the custodial assets were available to be used, the court may not force an unwilling custodian to spend them, absent an abuse of discretion by the custodian. Both the UGMA and UTMA authorize an interested person to seek an order regarding use of custodial property. The UTMA states:
On application of an interested person or the minor if the minor has attained the age of 14 years, the court may order the custodian to deliver or pay to the minor or expend for the minor's benefit so much of the custodial property as the court considers advisable for the use and benefit of the minor.
[N.J.S.A. 46:38A-33.]
The UGMA includes a substantially identical provision. N.J.S.A. 46:38-27(b). By its terms, the provision seems to leave it to the court to override the custodian's judgment so long as the court considers the expenditure "advisable."
The court finds no basis in the statute or its history to presume that the custodian of an UGMA or UTMA account should be afforded any less respect than any other fiduciary or trustee operating under formal trust documents. The court therefore reads the above provision to authorize the court to order advisable spending only if, as an initial matter, it determines that the custodian has abused his or her discretion. See Restatement (Second) on Trusts, § 187 (1992) ("Where discretion *1279 is conferred upon the trustee with respect to the exercise of a power, its exercise is not subject to control by the court, except to prevent an abuse by the trustee of his discretion."). Interestingly, the abuse of discretion of UGMA or UTMA custodians seems to arise in cases, like Cohen v. Cohen, supra, where the custodian has expended funds that someone later asserts was inappropriate. In this case, Ms. Roberts asserts that the custodian's refusal to spend should be questioned.
In some respects, the custodial arrangement under the UTMA is like a trust. "[T]he Act might be considered a statutory form of trust or guardianship that continues until the minor reaches 21." National Conference of Uniform Law Commissioners, Uniform Transfers to Minors Act, Prefatory Note (1986). Granting the custodian the same level of discretion afforded a trustee is consistent with the policy behind the UTMA. The model act was designed to enable parties to gift property to minors under the control of a custodian, in recognition that creation of formal trusts was a complex and expensive undertaking for many families, and the transaction costs of creating a formal trust would be excessive in view of the size of the gift. The creation of a custodial arrangement under the UTMA was designed to create a simple solution to place a gift to a minor under the control of a fiduciary.
A trust, in which control and management reside with a trustee, for the designated beneficiaries, offers one solution. But trusts are complex and expensive to create and manage. For smaller property transfers, they are not a satisfactory alternative. Formal guardianships or conservatorships are, also, not generally useful for the purpose. What the Gifts to Minors Act proposed, and what the new UTMA continues, is a custodianship, in an adult or appropriate institution, of property that otherwise transfers directly to the minor
[Summary of Uniform Transfers to Minors Act, National Conference of Uniform Law Commissioners, reprinted at http://www.nccusl.org/Update/uniformactsummaries/uniformactssuttma.asp.]
Although Ms. Roberts insists that the custodial funds should be used, Mr. Roberts's refusal is not, on its face or based on the evidence, an abuse of discretion.
If discretion is conferred upon the trustee in the exercise of a power, the court will not interfere unless the trustee in exercising or failing to exercise the power acts dishonestly, or with an improper even though not a dishonest motive, or fails to use his judgment, or acts beyond the bounds of a reasonable judgment. The mere fact that if the discretion had been conferred upon the court, the court would have exercised the power differently, is not a sufficient reason for interfering with the exercise of the power by the trustee.
[Restatement (Second) on Trusts, comment (e) on § 187 (1992).]
It is Ms. Roberts's burden to establish that Mr. Roberts is acting dishonestly, improperly, or abdicating his judgment. Certainly at this stage of the case, there is at least an issue of fact regarding Mr. Roberts's good faith. Therefore, the court will not at this stage override his refusal to use custodial assets.
In view of the foregoing discussion, the court will deny without prejudice Ms. Roberts' motion to compel distribution of the custodial assets. The parties have already agreed to use anticipated tax refunds. If that is insufficient to cover immediate tuition needs, the parties may apply for further relief.
COUNSEL FEES
Rule 5:7-2(a) requires that all applications for counsel fees pendente lite be accompanied by an updated case information *1280 statement. If a case information statement has already been filed, the party seeking fees must file updated financial information no later than eight days prior to the motion hearing date. Both parties have failed to comply with this Rule. Ms. Roberts has only partially updated her case information statement and has not included any of her updated income information, pay stubs, 2004 or 2005 tax return, or 2005 W-2 forms. Ms. Roberts has only updated her current expenses. Ms. Roberts' counsel has failed to include a certification of services as required by R. 4:42-9. The motion for counsel fees with respect to the motions regarding schooling will therefore be denied without prejudice to a later determination at trial.
NOTES
[1] The UGMA was adopted in 1967; the UTMA in 1987. Both laws exist side-by-side. But, the UTMA will repeal the UGMA effective 2007. The UTMA generally expanded the kind of property that can be gifted under the act's provisions.