**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2096-19

F.Y.,

    Plaintiff-Appellant,

v.

J.L.,

    Defendant-Respondent.

_____

Submitted February 9, 2021 – Decided March 5, 2021

Before Judges Fisher and Moynihan.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Essex County, Docket No. FD-07-3158-19.

Aihong You, attorney for appellant.

Ren Rong Pan, attorney for respondent.

PER CURIAM

The parties were married in China in 2000. They have one child, Kahn (a fictitious name), who was born in 2006. In 2009, they divorced; their issues

were resolved by way of a marital settlement agreement (MSA), which became part of a "certificate of divorce" issued by Chinese authorities. There appears to be no dispute that the MSA provided plaintiff F.Y. (Fang, a fictitious name) with sole custody of Kahn and all the parties' marital assets, estimated in our currency at $3,000,000, leaving defendant J.L. (Jae, a fictitious name)[1] – in his words – "financially naked." In giving her sole custody, the MSA also obligated Fang to solely provide for the child's support.

Jae remarried; he and his second wife have two children. They moved to this country in 2017 and took up residence in New Jersey. Fang and Kahn remained in China.

Kahn came to live with Jae and his new family in Short Hills in May 2018. Less than a year later, Kahn flew back to China; Jae told Fang he did not want Kahn back. Believing Kahn would not get a sufficient education in China due to her financial situation, Fang and Kahn traveled to New Jersey in April 2019, and Fang tried to get Jae to take Kahn back. Jae refused to take custody of Kahn or otherwise provide support for him.

Fang did not seek relief in the People's Court in China; she instead filed a complaint in our courts in May 2019, claiming Kahn should benefit from Jae's

---

[1] We use initials and fictitious names to protect the parties' privacy interests. See R. 1:38-3(d)(1).

financial success. Fang's complaint demanded, among other things, an order granting her sole legal and physical custody of the child and obligating Jae to pay her child support. In his responsive pleading, Jae alleged Fang breached the MSA, which he claims obligated Fang alone to support the child, and that he should be reimbursed for funds expended on Kahn's behalf while he resided with him in New Jersey.

The trial judge dismissed Fang's action without prejudice. The judge closely analyzed the requirements of the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA), N.J.S.A. 2A:34-53 to -95, and the Uniform Interstate Family Support Act (UIFSA), N.J.S.A. 2A:4-30.124 to -30.201, in concluding in a thorough fourteen-page written opinion that the court lacked jurisdiction over Fang's requests for the modification of the custody and child support agreements contained in the parties' MSA. The judge later denied Fang's motion for reconsideration for reasons expressed in another well-reasoned written opinion.

Fang appeals both orders, arguing:

> I. IN DETERMINING THAT THE [MSA] IS THE CONTROLLING SUPPORT ORDER, WHICH WILL BE REGISTERED FOR THIS COURT TO ENFORCE, THE LOWER COURT FAILED TO IDENTIFY THE DETAILS UPON WHICH IT MADE SUCH DETERMINATION (Not Raised Below).

3

II. THE [MSA] IS NOT QUALIFIED AS A CONTROLLING ORDER UNDER THE UCCJEA AND UIFSA.

    A. China And U.S. Do Not Have Any Reciprocal Arrangement To Enforce Any Support Orders Entered By The Other's Courts.

    B. Under The Doctrine Of Comity, The Law Of This State Does Not Recognize Zero Support Amount For A Child.

    C. China Did Not Have The Procedures For The Issuance And Enforcement Of Support Orders Which Are Substantially Similar To The Procedures In This State.

III. THIS COURT HAS SUBJECT MATTER JURISDICTION TO ISSUE A CONTROLL[I]NG CUSTODY AND SUPPORT ORDER UNDER THE UCCJEA AND UIFSA.

We find no merit in these arguments[2] and affirm substantially for the reasons set forth in Judge Christopher S. Romanyshyn's written opinions, adding only the following comments.

We start by recognizing that the only real dispute concerns child support. Fang does not require an order granting her custody because she already has custody of Kahn pursuant to the MSA and the certificate of divorce entered in

---

[2]  To the extent we do not discuss all Fang's arguments it is because we find those unmentioned arguments to be without sufficient merit to warrant discussion in a written opinion.  R. 2:11-3(e)(1)(E).

China and because Jae neither argues otherwise nor seeks custody. We, thus, reject Fang's arguments to the extent she seeks our review of the judge's determinations about the UCCJEA, which relates to the modification and enforcement of child custody orders entered beyond our boundaries.

The controversy before us concerns only whether our courts may exert jurisdiction to modify a child support agreement endorsed by a foreign tribunal that indisputably had jurisdiction over both parents and the child at the time. In this regard, we first observe that the MSA is not a mere agreement between two parties. In 2009, the MSA received the imprimatur of the Chinese government, as Fang acknowledged; in her submissions in the trial court Fang represented that, after entering into the MSA, she and Jae

> went to the Bureau of Civil Affairs of Chaoyang District on December 28, 20[0]9. After . . . submit[ting] the agreement, without any discussion or question having been asked about the contents of the agreement, the staff issued the[] divorce certificate in a couple of minutes.

This process does not appear to be unusual. Article 31 of the Marriage Law of the People's Republic of China states that "[d]ivorce shall be allowed if both husband and wife are willing to divorce"; in that circumstance, the parties need only both "apply to the marriage registration authority," which then issues a certificate of divorce "after confirming that both parties are indeed willing to divorce and have made proper arrangement for their children and have properly

5

disposed of their property."  So, the trial court here was not being asked to enforce or modify a mere agreement but a divorce decree entered in accord with the laws of the parties' homeland.

In seeking the modification of the parties' divorce decree, the trial court was obligated to consider the application of the UIFSA, which is a model act adopted not only in this State but by every other state and territory in the union, Marshak v. Weser, 390 N.J. Super. 387, 390 (App. Div. 2007), for the purpose of advancing "unity and structure in each state's approach to the modification and enforcement of child support orders," Sharp v. Sharp, 336 N.J. Super. 492, 503 (App. Div. 2001).  The Act's approach starts with the designation of one order as the "controlling child support order" and requires, as well, the identification of the tribunal possessing exclusive jurisdiction to modify the controlling order.  Lall v. Shivani, 448 N.J. Super. 38, 45 (App. Div. 2016).

In this case, there is no difficulty identifying the "controlling child support order" because there is only one such order:  the MSA provision that declared Jae would have no child support obligation.  See N.J.S.A. 2A:4-30.135(a) (recognizing that "if only one tribunal has issued a child support order, the order of that tribunal controls and shall be recognized").  That also makes China the exclusive jurisdiction under the UIFSA.  See N.J.S.A. 2A:4-30.133(e).  And until circumstances change to a point where our courts may obtain the authority

6                                                                    A-2096-19

to modify under the UIFSA, the existing provisions of the MSA, which were endorsed by the certificate of divorce in China,[3] remain applicable. See N.J.S.A. 2A:4-30.170(c).

In that instance, the authority to modify the exclusive jurisdiction's controlling child support order under N.J.S.A. 2A:4-30.178 first requires a determination that another of UIFSA's sections – N.J.S.A. 2A:4-30.180(a) – does not apply. By enacting that provision, the Legislature declared that our courts have the authority to enforce and modify a child support order of another jurisdiction if all the parties "reside in this State and the child does not reside in the issuing state." N.J.S.A. 2A:4-30.180(a). While the judge found the child was no longer residing in China – he had moved to his father's New Jersey home the year before and had been registered to attend school here even though he had briefly returned to China – the judge also found that Fang was a visitor to New Jersey – not a resident – since she had only just arrived and was in the country on a visitor's visa.

Because N.J.S.A. 2A:4-30.180(a) wasn't applicable, the judge correctly turned to N.J.S.A. 2A:4-30.178, which states that our courts "may modify a child

---

[3] There is no significance to the fact that the parties' divorce was not the subject of judicial proceedings. See N.J.S.A. 2A:4-30.125(dd).

support order issued" elsewhere[4] if one of two separate set of circumstances exist.

The first set of circumstances – described in N.J.S.A. 2A:4-30.178(a)(1) – is present if:

> (a) neither the child, nor the obligee who is an individual, nor the obligor resides in the issuing state;
>
> (b) a petitioner who is a nonresident of this State seeks modification; and
>
> (c) the respondent is subject to the personal jurisdiction of the tribunal of this State.

Since the judge found that Kahn resides in New Jersey – and there being no doubt that Jae is a New Jersey resident – the matter turns on Fang's status. It seems clear that in these circumstances Fang continues to be a resident of China because she was in this country, when applying for relief, only by way of a visitor's visa; in that instance, subsection (a) would not allow for modification jurisdiction. But, even if it could be said that Fang had by the time of the trial court proceedings ceased being a resident of China, subsection (b) could not be found because that provision requires that the petitioner be "a nonresident" of New Jersey. In other words, when the judge ruled, Fang was a resident of either

---

[4] We assume, without deciding, that N.J.S.A. 2A:4-30.178 and N.J.S.A. 2A:4-30.180 apply when the controlling support order sought to be modified emanated from a foreign country and not just a state or territory of this country.

China or New Jersey. Our courts would lack jurisdiction to modify the Chinese support order if Fang was a resident of China (because of subsection (a)) and if she was a resident of New Jersey (because of subsection (b)).

The second set of circumstances was partially established. N.J.S.A. 2A:4-30.178(a)(2) permits the assumption of jurisdiction to modify another jurisdiction's support order if it is first shown that the child is a resident of New Jersey (which the judge found to be so) "or a party . . . is subject to the personal jurisdiction" of our courts (and Jae was). But this provision also requires that "all of the parties . . . have filed consents in a record in the issuing tribunal" that would authorize this State to modify the support order and assume "continuing, exclusive jurisdiction." Ibid. There was no evidence of any party having filed in China consent to allow our courts to modify the support order.

Finding no recourse for Fang in these provisions, Judge Romanyshyn considered the applicability of N.J.S.A. 2A:4-30.182(c), which would permit the modification of a foreign country's child support order if that foreign country's tribunal "lacks or refuses to exercise jurisdiction to modify its child support order." As the judge demonstrated – more fully in his opinion denying reconsideration – it was not shown that the courts of the People's Republic of China would not entertain an application to modify the child support provision.

Indeed, like here, it seems that attaining a marital settlement agreement and a divorce in China does not necessarily preclude China's courts from resolving disputes between divorced parties. Article 36 of China's Marriage Law declares that a divorce does not end a parent's relationship with a child of the marriage and that both parents retain the obligation to raise their children; this article, however, declares that the children of divorced parents shall be raised by their mother "during lactation," and after, if necessary, any custody dispute "shall be settled by the people's court according to the specific conditions of both parties and in light of protecting the rights and interests of the children." Article 37 allows for the resolution of disputes about the support of children if the parents cannot agree, and Article 38 provides for visitation by the non-custodial parent that can also be determined by the people's court if the parents cannot agree.

The trial judge concluded from this in both his original decision and in the written opinion denying reconsideration that avenues appeared to be open to Fang to seek relief in China, or at least that she hadn't demonstrated those avenues were closed. As a result, the judge correctly concluded, under the circumstances as presented to him, that Fang failed to demonstrate that the court could exercise jurisdiction to modify the child support provision contained in the parties' MSA.

10

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2096-19