781 A.2d 1065

CLAIRE PHILIPP, PLAINTIFF–APPELLANT, v. ROBERT
STAHL, DEFENDANT–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Submitted May 22, 2001—Decided October 3, 2001.

Before Judges WECKER, LESEMANN and LANDAU.

*Paras, Apy & Reiss*, attorneys for appellant (*Bonnie M.S. Reiss*, of counsel and on the brief).

*Hill Wallack*, attorneys for respondent (*James G. O'Donohue*, on the brief).

The opinion of the court was delivered by

LESEMANN, J.A.D.

The parties in this Family Part case were married in 1975, divorced in Georgia on April 23, 1993, and seem to have spent much of their time since the divorce battling each other, first in the courts of Georgia and thereafter in the courts of New Jersey. The present appeal stems from an application of the plaintiff wife to require her ex-husband to contribute to their daughter's college expenses at Princeton and for additional miscellaneous relief. The trial court held that the Uniform Interstate Family Support Act (UIFSA), *N.J.S.A.* 2A:4–30.65 to –30.123, placed "exclusive jurisdiction" in the courts of the state that had issued the original support order (Georgia), and thus this state had no jurisdiction to act. We are satisfied, however, that since a court in this state

issued a number of post-divorce orders which touched on support of the parties' children,[1] and both the plaintiff wife and the daughter whose educational costs are at issue live in this state, the New Jersey Family Part does have jurisdiction to hear and resolve the matter. Accordingly, we reverse.

I

UIFSA was adopted by all fifty states at the instigation of Congress which sought to eliminate the problem of conflicting support orders by different states, each of whom claimed jurisdiction in a support dispute. Thus, the provisions of the Georgia statute are virtually identical to those of the New Jersey Act. *See GA.Code Ann.* § 19–11–110 to 118.[2]

The basic concept of UIFSA is relatively simple, although its format may contribute to some lack of clarity by employing what would seem to be self-defining terms, such as "continuing exclusive jurisdiction," to mean something other than what their normal usage would suggest. Indeed, it is the seemingly anomalous concept of two states having such "continuing exclusive jurisdiction" over the same matter which lies at the root of the jurisdictional dispute in this case.

The jurisdictional provisions of UIFSA which govern this case are set out in four subsections of *N.J.S.A.* 2A:4–30.72. Subsection a provides that, unless all parties agree otherwise, if a court of this state has issued "a support order," then that court has "continuing, exclusive jurisdiction over a child support order" so long as either the obligor or obligee under the order, or "the child for whose benefit the support order is issued" continues to reside in this state.[3] Subsection b, however, provides that a court of this

---

[1] Defendant raised no objection to New Jersey's exercising jurisdiction in any of those cases.

[2] The statute became effective in this state on March 5, 1998.

[3] Recall that the provisions of the Georgia statute are identical with those quoted here respecting New Jersey, and thus the same grant of "exclusive

state which has issued a child support order "may not exercise its continuing jurisdiction to modify the order if the order has been modified by a tribunal of another state pursuant to this act or a law substantially similar to this act."

Subsection c seems to be essentially a restatement of subsection b. It says that if a "child support order" issued by this state is "modified by a tribunal of another state pursuant to this act or a law substantially similar to this act," the New Jersey court "loses its continuing, exclusive jurisdiction with regard to prospective enforcement of the order issued in this State...." Finally, subsection d directs that a court of this state "shall recognize the continuing, exclusive jurisdiction of a tribunal of another state which has [already] issued a child support order pursuant to this act...." [4]

The anomaly in the statute, and the seeming self-contradiction in its terminology, stems from its direction that so long as a support order issued by one state is in effect, a second state shall not also issue a support order in that same case. However, the statute then contains a description of what is to happen if such a second state does issue a support order: the order of the second state replaces that of the first, and it is the second state not the first which retains "exclusive jurisdiction."

If the New Jersey court has issued one or more orders that "modified" the original Georgia "support order" (embodied in its judgment of divorce), then Georgia lost the "continuing, exclusive jurisdiction" which it once had regarding support matters, and that "continuing, exclusive jurisdiction" is now vested in New Jersey. Plaintiff claims there have been at least three such New

jurisdiction" and limitations upon such "exclusive jurisdiction," apply to Georgia as well as to New Jersey. *See GA.Code Ann.* § 19–11–114(a) to (d).

[4] *N.J.S.A.* 2A:4–30.72 also includes a subsection e, dealing with temporary support orders, and subsection f, dealing with spousal support and custody visitation matters, neither of which pertains to this appeal.

Jersey orders and that jurisdiction to decide the support issue she now raises rests here. We agree.

The facts of the case, as they relate to the jurisdictional issue on appeal, are not in dispute. The Georgia divorce decree was issued on April 23, 1993. It incorporated a binding arbitration agreement dealing with custody, support and related matters, and also embodied the parties' agreement regarding visitation. At the time, the parties' two children were aged twelve (Julia) and eight (Eric). The wife was designated as principal custodial care giver and the husband was to pay child support of $500 per month, per child. He was also to pay for both children's tuition at private school (with limitations tied to the costs of certain designated schools in Georgia), and the judgment further provided that "in addition to tuition," the father would be "responsible for other reasonable costs of the school, for normal fees, and activities of the other students such as athletic events charged by the school and educational trips...." In addition, defendant was to insure the children under his medical plan, with the parties dividing equally the cost of medical services beyond those covered by the plan. The wife was to maintain the children under her dental plan, with uncovered costs to be similarly divided between the parties. And finally, the judgment provided that, "If either or both of the children attend summer camp, the cost shall be equally divided between the parents." Neither the judgment nor the arbitration agreement whose provisions were incorporated into the judgment contained any specific reference to college expenses.

Less than six months after entry of the divorce judgment, the plaintiff wife decided to move, with the children, to New Jersey. As required by the judgment, she notified the defendant of that intention,[5] and defendant moved to enjoin the relocation and also to obtain custody of the children. That motion was denied by the Georgia Superior Court on September 14, 1993. Plaintiff notes,

---

[5] Plaintiff said her job in Georgia had been placed in jeopardy by a major reorganization and that was her reason for the proposed move.

correctly, that the decision rendered on September 14, 1993, denying defendant's requested relief, was the last matter heard and decided in a Georgia court.

In March 1994, plaintiff moved in the Family Part of the New Jersey Superior Court for an order modifying visitation. The New Jersey judge hearing the matter consulted with his counterpart in Georgia and thereafter announced (and included in an order) a statement that, "[I]t has been mutually determined (by the two judges) that this court has proper jurisdiction and that there is no conflict with the ongoing proceedings in Georgia." The New Jersey judge then found this state to be the "home state of the children" under the Uniform Child Custody Jurisdiction Act (UCCJA), *N.J.S.A.* 2A:34–31. The order went on to supercede the visitation provisions in the Georgia judgment with a new visitation program and then significantly for our purposes also changed a portion of the support provisions in the Georgia judgment. It modified the requirement that called on the husband to pay for all visitation costs (which had been entered while the wife still lived in Georgia), and provided instead that the defendant was to pay sixty percent and the plaintiff forty percent of those expenses. The order further stated that, except as thereby changed, all provisions of the divorce judgment were to remain in full force and effect. However, it then included another significant provision, specifying that "[a]ny modifications, supplementations, or enforcement of this Order or of the 1992 judgment shall go forward before this court."

On April 25, 1995, the New Jersey Family Part entered a second order which had a significant effect on support payments. In addition to enforcement provisions, directives respecting reimbursement for past due amounts, and a provision for wage garnishment in the future, the court changed the prior order which had called for payment of $500 per month for each of the two children, to provide for one unallocated payment of $1,000 per month for the two children. That modification was not simply a change in verbiage. As plaintiff correctly argues, while on its face

the Georgia judgment would terminate payments for the older child when she became emancipated, and thus defendant's total child support payments would be reduced to $500 per month, the New Jersey child support guidelines provide otherwise. Application of those guidelines would mean that when the older child became emancipated, defendant's payments would be reduced to $688 per month rather than to $500 per month. In addition, this order contained a provision comparable to that quoted above from the March 1999 order, stating that "the Chancery Division of this court shall retain jurisdiction over the subject matters addressed herein."

The third New Jersey order which affected support payments was entered on August 18, 1999. That order, entered by consent of the parties, provided that custody of Eric would pass to defendant in Georgia. However, it also provided that defendant would maintain health insurance for Eric and would be "responsible for all [his] uninsured health care expenses, including but not limited to dental expenses...." It thus relieved plaintiff of the obligation to pay one-half of Eric's un-reimbursed medical expenses and also relieved her of the obligation to maintain dental insurance for Eric. The order further provided that, except as related to the medical expense and insurance issue, all provisions of the 1992 judgment remained in effect, and it contained a provision similar to that set out in the two other New Jersey orders described above. It said that, "Any modifications, supplementation, or enforcement of any [prior order] or of this Order shall go forward before this Court."

■ Plaintiff argues there are other New Jersey orders as well, which modify the original Georgia support judgment and thus provide a further basis for New Jersey's continuing jurisdiction under UIFSA. Those other orders, however, deal mainly with enforcement and it is not clear whether they could properly be characterized as modifying prior support orders. But regardless, the three orders just discussed do, clearly and unequivocally, modify prior support obligations. In the face of those orders, we

are satisfied that the UIFSA provisions quoted above not only justify, but indeed require, that further such applications be handled in this state.

Further, it seems clear that the parties at least impliedly understood and acknowledged that all further proceedings in this case—concerning support as well as custody and visitation—would be held in New Jersey. The provisions in the three quoted orders all so state. And while those statements do not expressly refer to support issues, their broad, virtually all inclusive language impliedly includes those issues as well. If the parties had some other intention—if they intended that support issues would remain within the jurisdiction of the Georgia court—it is difficult to believe they would not have so specified or, at least that they would not have employed less inclusive language in stating that all further proceedings would be in New Jersey.

In addition, there is a substantial benefit in vesting one court with jurisdiction to deal with all issues concerning one family, rather than directing certain issues to one court and others to a different court. That possibility of "split jurisdiction" is inherent in the combination of UIFSA which sets out criteria for jurisdiction relating to support issues and the somewhat different criteria employed under the Uniform Child Custody Jurisdiction Act (UCCJA), *see N.J.S.A.* 2A:34–28 to –52. Here, in view of the 1992 determination that New Jersey was the "home state" of the children under the provisions of UCCJA, and that custody issues should be resolved here, there is an obvious benefit in having related support issues also handled here. Although such unified treatment may not always be possible, when it is possible and is called for by the applicable facts and law, we should welcome the opportunity, rather than feel inclined to reject it because of some unrealistically narrow definition of "support," or some other reason to now return the case to a Georgia court which last dealt with it in 1993.

Finally, we note that while both parties cite case authority for their positions, we find no case which has definitively resolved the

issue presented here. One of the cases cited by both sides, *Schuyler v. Ashcraft,* 293 *N.J.Super.* 261, 680 *A.*2d 765 (App.Div. 1996), *certif. denied,* 147 *N.J.* 578, 688 *A.*2d 1054 (1997), a pre-UIFSA case, holds simply that (even before UIFSA) when a support order has been entered in Florida, and there has been no other support proceeding in this state, New Jersey does not have authority to modify the Florida order. *Genoe v. Genoe,* 205 *N.J.Super.* 6, 500 *A.*2d 3 (App.Div.1985) also cited by both sides, deals only with an indisputable proposition: that merely because this state may have jurisdiction to modify custody or visitation provisions embodied in an earlier order from another state, does not mean it also has authority to modify a support provision in that order. And *Whitfield v. Whitfield,* 315 *N.J.Super.* 1, 716 *A.*2d 533 (App.Div.1998), simply holds that the authority to enforce an order from another state does not include the power to modify that order.

*Peace v. Peace,* 325 *N.J.Super.* 122, 737 *A.*2d 1164 (Ch.Div.1999) dealt with issues of consent to jurisdiction under UIFSA and the significance of determining which of two states is the home state of a child whose support is in issue. The court correctly perceived that "more than one state can have continuing exclusive jurisdiction under UIFSA," and the issue is to determine which state's order is "controlling." *Id.* at 131–32, 737 *A.*2d 1164. It concluded that jurisdiction rested with New Jersey, which had issued the most recent support orders and was the home state of the child a decision consistent with our conclusion that New Jersey also has jurisdiction in this case. *See also,* as consistent with our interpretation of UIFSA and also supporting the conclusion reached here, *Hoehn v. Hoehn,* 716 *N.E.*2d 479 (Ind.Ct.App.1999).

In sum, the language of UIFSA, a reasonable interpretation of facts and law which support the integration into one court of all issues concerning one family, and the limited case law, all support the view that the New Jersey court here had jurisdiction to deal with plaintiff's attempt to require defendant to contribute to their daughter's college expenses. New Jersey has dealt with prior

"support" issues in this case, and this is simply a variation on those "support" matters. *See Kiken v. Kiken,* 149 *N.J.* 441, 449–50, 694 *A.*2d 557 (1997); *Sharp v. Sharp,* 336 *N.J.Super.* 492, 503, 765 *A.*2d 271 (App.Div.2001). A return to Georgia at this point has little to commend it, and should be ordered only if the statute clearly requires that result. It does not, and accordingly, the trial court's determination that it has no jurisdiction to deal with this matter is reversed.

## II

The trial court's dismissal of this matter on jurisdictional grounds did not specify whether it was referring to subject matter jurisdiction or personal jurisdiction over the defendant. In any event, the issue need not detain us because there is no question that this state may exercise personal jurisdiction over the defendant.

Although defendant claims New Jersey has no statutory or constitutional basis on which to exercise personal jurisdiction over him, we disagree. *N.J.S.A.* 2A:4–30.68 lists seven bases on which a court may obtain personal jurisdiction over a defendant. The seventh listed category is "any other basis consistent with the constitutions of this State and the United States for the exercise of personal jurisdiction." [6] That reference is to the "minimum contacts" analysis which provides a foundation for exercising this state's "long-arm jurisdiction." *See International Shoe v. Washington,* 326 *U.S.* 310, 66 *S.Ct.* 154, 90 *L.Ed.* 95, (1945). And *see, Kulko v. California Superior Court,* 436 *U.S.* 84, 98 *S.Ct.* 1690, 56 *L.Ed.*2d 132 (1978), holding that without such minimal contacts, a

---

[6] Plaintiff also argues that jurisdiction may be had under subsection b which refers to an individual submitting to jurisdiction "by consent, by entering a general appearance, or by filing a responsive document having the effect of waiving any contest to personal jurisdiction." One could make a reasonable argument that defendant's actions did amount to "consent," in view of his numerous appearances before New Jersey courts on prior matters which included support issues.

state cannot exercise jurisdiction over a parent residing in another state, but also indicating that if there are such minimal contacts, there is no impediment to the exercise of long-arm jurisdiction.

█ Here, there clearly were more than minimal contacts to provide a basis for jurisdiction. From 1994 through 1999, the defendant was before the courts of this State on what seems an almost constant basis. Some of those proceedings were instituted by him; some by his ex-wife. But all implicated and affected the relationship stemming from his former marriage, his divorce and the subsequent orders affecting that divorce. The contacts were not minimal; they were broad and virtually all-encompassing.

Further, the provisions included in three of the New Jersey court orders specifically stated that further proceedings would take place in this State. As noted above, while those statements did not specifically refer to support matters, they did not exclude support matters, they were couched in broad language, and none referred to the likelihood or possibility of further proceedings in Georgia. Thus, to paraphrase the test referred to frequently in such matters, defendant could hardly have been surprised at the possibility of being "haled into court" in New Jersey. *Waste Mgmt., Inc. v. Admiral Ins. Co.*, 138 *N.J.* 106, 120–21, 649 *A.*2d 379 (1994), *cert. denied*, 513 *U.S.* 1183, 115 *S.Ct.* 1175, 130 *L.Ed.*2d 1128 (1995). As noted, virtually all matters affecting his divorce and his family had occurred here on an almost nonstop basis over the last five to six years, and New Jersey certainly has the power to exercise personal jurisdiction to resolve this latest issue.

### III

Although plaintiff asks us to declare that defendant is required to share in his daughter's college expenses, that is not an appropriate determination for us to make at this time. Because of its conclusion that it lacked jurisdiction to decide the matter, the trial court did not deal with the issue. Rather than our dealing with it on appeal, it is appropriate that we remand the matter to the trial court, to hold the necessary hearing and then determine, based on

the standards discussed in *Newburgh v. Arrigo*, 88 *N.J.* 529, 443 *A.*2d 1031 (1982), whether and to what extent each of the parties should contribute to their daughter's college expenses. *See N.J.S.A.* 2A:34–23a; *Finger v. Zenn*, 335 *N.J.Super.* 438, 762 *A.*2d 702 (App.Div.2000), *certif. denied*, 167 *N.J.* 633, 772 *A.*2d 935 (2001). The basis asserted by defendant as a reason why he should not be required to contribute—the absence of a relationship between him and his daughter—is simply one of the many factors that go into that determination, which should be made initially by the trial court after the necessary hearing.

## IV

■ Although the Family Part concluded that it had no jurisdiction to deal with the issue of college expenses, it did decide a number of miscellaneous requests by plaintiff for payments by defendant.[7] The court rejected plaintiff's request for participation by defendant in certain school transportation and related expenses for the children; certain camp expenses; the cost of an airplane trip necessitated by the change in Eric's custody; and payment of school books and supplies. We believe the court erred on the last mentioned issue and that books and supplies should be deemed subsumed within the "normal fees" which defendant was required to pay along with tuition. However, except for that issue, we find that the judgment of the trial court was based on findings of fact which are adequately supported by the evidence, that the issues of law (and those related to the interpretation of prior orders) have no merit and that none of them require discussion in this written opinion. *R.* 2:11–3(e)(1)(A) and (E).

Finally, we note plaintiff's claim that the trial court showed bias against her, and her request that the matter be remanded for

---

[7] Plaintiff claims the court's dealing with these issues on the merits contradicted its determination that it had no jurisdiction to deal with college expenses. Plainly, however, the court viewed these relatively minor matters as enforcement of prior orders and not a modification thereof, and thus there was no inconsistency in its actions.

hearing by a different judge. We find no basis for any such finding nor for any direction that the matter be handled on remand by a different judge.

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

WECKER, J.A.D., concurring in part, dissenting in part.

I concur in Part IV of the majority's opinion. However, I disagree with the majority's interpretation and application of the Uniform Interstate Family Support Act (UIFSA or "the Act"), *N.J.S.A.* 2A:4–30.65 to 30.123, which leads my colleagues to conclude that the New Jersey Family Part has jurisdiction over plaintiff's application for an order requiring defendant to contribute to college costs for their oldest child, Julia, and to determine child support for their younger child, Eric. I therefore dissent from Part I of the majority's opinion and would affirm the Family Part order dismissing plaintiff's application for lack of subject matter jurisdiction.

I also dissent from Part II of the majority's opinion, which holds that New Jersey has personal jurisdiction over defendant for purposes of modifying child support. In my view, the existing record does not permit the conclusion that defendant's participation in New Jersey proceedings waived his challenge to personal jurisdiction, *see N.J.S.A.* 2A:4–30.68b, or that he otherwise meets the minimum contacts required for long-arm jurisdiction. *See N.J.S.A.* 2A:4–30.68g. If New Jersey did have subject matter jurisdiction, I would nevertheless remand for development of a record sufficient to make a determination respecting *in personam* jurisdiction.

If both New Jersey and Georgia could be found to have continuing exclusive jurisdiction over child support modification, Georgia would be the proper jurisdiction with respect to any new determination of child support for Eric, since Georgia is now his home state. *See N.J.S.A.* 2A:4–30.74b(2).

Finally, if both subject matter and personal jurisdiction to resolve plaintiff's application for college costs existed in New Jersey, I would agree that a plenary hearing with respect to college expenses is required, as held in Part III of the majority opinion.

No New Jersey case has previously addressed the issues raised by this appeal, and those few New Jersey cases that do address UIFSA are not inconsistent with my conclusions. Moreover, decisions in other jurisdictions are consistent with my application of UIFSA to the facts before us.

In reaching my conclusions, I also considered and rejected the possibility that a conflict of laws regarding a parent's obligation to contribute to a child's college expenses should affect our determination respecting subject matter jurisdiction.

Here is the relevant history. Julia, now almost twenty years old, has been living in New Jersey with plaintiff since 1993, when a Georgia court entered an order over the objection of defendant and permitted plaintiff to move with the children, Julia and Eric (now nearly sixteen), to New Jersey. By agreement set forth in a 1999 New Jersey consent order, Eric returned to live with his father in Georgia.

Julia completed her high school education at a private school in New Jersey. Defendant shared the expense of that schooling in accordance with the original Georgia divorce judgment. Julia is now enrolled (and actually completed one year) at Princeton University, and defendant objects to contributing to the cost of her college education. In addition to raising subject matter and personal jurisdiction defenses under UIFSA in the Family Part, defendant objected on the merits and offered evidence of his allegedly involuntary estrangement from Julia for more than four years as a determinative factor under *N.J.S.A.* 2A:34–23a(5). The question is whether UIFSA prohibits the New Jersey Superior Court from proceeding with a hearing on the merits.

The motion judge explained his decision dismissing plaintiff's motion for lack of subject matter jurisdiction:

> THE COURT: This case clearly emanates from Georgia where the parties were divorced, where there was a support order entered. That support order has, to the best of my knowledge, never been changed, altered or challenged. And the parties have lived under that supporter—support order up until the present and including right now they live under that support order. I am being asked to assume the jurisdiction for purposes of changing that support order.
>
> UIFSA states, very clearly, that a state with continuing jurisdiction is a state that has issued a support order and remains the residence of the obligor, unless the individual parties, plural, have filed written consents with the issuing state for another state to assume continuing exclusive jurisdiction. That's what it says. That's relatively plain English. I've received nothing to indicate that there has ever been written consents sent to the issuing state requesting that another state assume continuing exclusive jurisdiction. I have an obligor who has always been in Georgia, remains in Georgia and has always filed a Georgia order as it reflects—as it refers and reflects on support. New Jersey, under U–I–F–S–A, must recognize the continuing exclusive jurisdiction of the other state of Georgia.
>
> It is the finding of this court that based upon the facts before it and everything that has been set forth on the record today, it just doesn't have jurisdiction. That the appropriate forum is Georgia.

I agree. However, the judge's reasoning, while correct, addressed only that portion of UIFSA, codified at *N.J.S.A.* 2A:4–30.72a(1) and in Georgia at *O.C.G.A.* § 19–11–114(a)(1), which provides that a court that issues a child support order "consistent with the law [of the forum] has continuing exclusive jurisdiction over a child support order" as long as the issuing state remains the residence of either party or the child.

The majority, however, finds subject matter jurisdiction in New Jersey based upon certain child support enforcement orders previously issued in New Jersey, relying on *N.J.S.A.* 2A:4–30.72b and its Georgia counterpart:

> A tribunal [of this State] issuing a child support order consistent with the law [of this State] may not exercise its continuing jurisdiction to modify the order if the order has been modified by a tribunal of another state pursuant to this [act] or a law substantially similar to this [act].

But the orders the majority cites, which enforce a Georgia divorce judgment that originally set the current child support, do not constitute child support modification orders that deprive Georgia of its continuing, exclusive jurisdiction under UIFSA, *N.J.S.A.*

2A:4–30.72b. In addition, if such orders were deemed to modify the Georgia child support order, they would not be "consistent with the law of the forum," *N.J.S.A.* 2A:4–30.72a, and could not establish continuing, exclusive jurisdiction over child support in the New Jersey tribunal.

To explain my conclusions, I will examine UIFSA, specifically *N.J.S.A.* 2A:4–30.72b, –30.72d, and –30.74, and the underlying purposes of the Act and its relationship to the Full Faith and Credit to Child Support Orders Act (FFCCSOA), 28 *U.S.C.A.* § 1738B.[1] Federal law required every state to enact UIFSA, which in New Jersey replaced the Revised Uniform Reciprocal Enforcement of Support Act (RURESA), *N.J.S.A.* 2A:4–30.1 to –30.64 (now repealed). *See* 42 *U.S.C.A.* § 666(f).[2] The apparent purpose of UIFSA is not only to establish a means of enforcing a support order when one or both parties have moved from the jurisdiction where the support order was issued, but also to establish ground rules for modifying such an order, and to do so in a way that avoids conflicting orders issued by courts of different states. Congress obviously anticipated that multi-state conflicts

---

[1] The FFCCSOA was enacted by Pub.L. 103–383, where Congress's findings include, at § 2(a)(2):

[T]he laws by which the courts of different jurisdictions determine their authority to establish child support orders are not uniform. . . .

The Congressional statement of policy behind the FFCCSOA, set forth at § 2(b) of the same law, is:

[I]t is necessary to establish national standards under which the courts of the various States shall determine their jurisdiction to issue a child support order and the effect to be given by each State to child support orders issued by the courts of other States.

The stated purposes of the FFCCSOA include, under § 2(c)(3):

to avoid jurisdictional competition and conflict among State courts in the establishment of child support orders.

[2] Pursuant to 42 *U.S.C.A.* § 666(f), enacted in 1996 by Pub.L. 103–383 along with certain amendments to the FFCCSOA, every state was required to enact UIFSA by January 1, 1998, including any amendments officially adopted by the National Conference of Commissioners on Uniform State Laws. The goal of uniformity is thus apparent.

over child support jurisdiction would be avoided if each state were to enact the same rules.

I will examine the operative provisions of the New Jersey UIFSA concerning continuing, exclusive jurisdiction over modification of child support orders, which are virtually identical in the New Jersey and Georgia enactments. Each state's statute thus mirrors that of the other. The concept of "continuing, exclusive jurisdiction" to avoid or resolve jurisdictional disputes appears to have been drawn directly from the FFCCSOA, first enacted in 1994. *See* 28 *U.S.C.A.* § 1738B(d).[3] To understand UIFSA's use of the concept of continuing exclusive jurisdiction, I look first to *N.J.S.A.* 2A:4–30.72a and *O.C.G.A.* § 19–11–114a, which provide:

> A tribunal [of this State] issuing a support order consistent with the law of [this State] has continuing, exclusive jurisdiction over a child support order:
>
> (1) as long as [this State] remains the residence of the obligor, the individual obligee, or the child for whose benefit the support order is issued; or
>
> (2) until all of the parties who are individuals have filed written consents with the tribunal of [this State] for a tribunal of another state to modify the order and assume continuing, exclusive jurisdiction.

Next I look to *N.J.S.A.* 2A:4–30.72d and *O.C.G.A.* § 19–11–114d, which require that:

---

[3] The FFCCSOA provides, much like *N.J.S.A.* 2A:4–30.72a(2) and b, the conditions under which a state court retains its continuing, exclusive jurisdiction:

> A court of a State that has made a child support order consistently with this section has continuing, exclusive jurisdiction over the order if the State is the child's State or the residence of any individual contestant unless the court of another State, acting in accordance with subsections (e) and (f), has made a modification of the order.
>
> [28 *U.S.C.A.* § 1738B(d).]

Subsection (e) of the federal law conditions the authority of a state court to "modify a child support order issued by a court of another State" upon either (A) both parties and the child having left the original state, or (B) both parties filing their written consent to the second state's assumption of continuing, exclusive jurisdiction over modification. Subsection (f) is virtually identical to *N.J.S.A.* 2A:4–30.74 in setting forth rules for determining which of multiple child support orders is to be recognized for purposes of establishing continuing, exclusive jurisdiction.

> A tribunal [of this State] shall recognize the continuing, exclusive jurisdiction of a tribunal of another state which has issued a child support order pursuant to this [act] or a law substantially similar to this [act].

Thus under the two states' similar provisions, Georgia has continuing exclusive jurisdiction over its child support order because defendant remains a Georgia resident and because the parties have not filed written consents for the New Jersey court to assume jurisdiction. New Jersey is bound to recognize Georgia's jurisdiction. The motion judge obviously based his decision upon these two provisions of UIFSA.

But we must also look at the limitations UIFSA places upon a state's continuing, exclusive jurisdiction, as set forth in *N.J.S.A.* 2A:4–30.72b and *O.C.G.A.* § 19–11–114b and relied upon by the majority:

> A tribunal [of this State] issuing a child support order consistent with the law [of this State] may not exercise its continuing jurisdiction to modify the order if the order has been modified by a tribunal of another state pursuant to this [act] or a law substantially similar to this [act].

Thus Georgia, as a state with continuing, exclusive jurisdiction, can lose its power to "exercise its continuing jurisdiction to modify" its child support order if the New Jersey tribunal issues an order modifying child support pursuant to UIFSA or a "substantially similar" law. The majority concludes that the New Jersey tribunal has done just that. I disagree.

The questions presented by this appeal are whether a New Jersey court has issued an order modifying child support, and if so, whether it has done so consistent with UIFSA or a similar law, such as the FFCCSOA or the now repealed RURESA. As I shall explain, I do not view any of the New Jersey orders entered in this case as having modified the Georgia judgment so as to satisfy the conditions of *N.J.S.A.* 2A:4–30.72 and deprive Georgia of continuing, exclusive jurisdiction.

In order to determine whether New Jersey has issued an order modifying the Georgia child support order, we must look first at the original Georgia order. When the parties were divorced in Georgia in April 1993, the judgment of divorce incorporated an

arbitration award that gave "principal custodial care" of the parties' two children, Julia, born October 16, 1981, and Eric, born December 10, 1985, to plaintiff. Under that award, and apparently by agreement, defendant was to "pay as child support for the children the sum of $500.00 [per month] for each child." Defendant was also to pay for their tuition at a named private school in Atlanta "or its equivalent," to be responsible for all related activities fees, and to maintain medical insurance for the children. The parties were to share equally the children's unreimbursed medical expenses. Plaintiff was to maintain the children on her dental insurance plan as long as it was available. Thereafter, defendant was to "be responsible for those costs." The costs of counseling, if necessary, and summer camps were to be shared equally.

The majority cites three subsequent New Jersey orders as support orders [4] which purportedly modify the child support provisions of the Georgia divorce judgment, thereby depriving Georgia of the power to exercise its own continuing jurisdiction and establishing "continuing, exclusive jurisdiction over a child support order" in New Jersey. *N.J.S.A.* 2A:4–30.72a and b. But none of those three New Jersey orders actually modifies the original child support provisions incorporated in the Georgia judgment; each enforces the Georgia judgment, as can be seen by close examination of the orders.

The first order cited by the majority was entered on April 21, 1994, in response to plaintiff's motion to set visitation, and over defendant's objection to New Jersey's jurisdiction.[5] The judge who issued the order determined that New Jersey was the home

---

[4] UIFSA, enacted in New Jersey in 1998, defines a "support order" to include an order "which provides for monetary support, health care coverage, arrearages, or reimbursement, and may include related costs and fees, interest, income withholding, attorney's fees, and other relief." *N.J.S.A.* 2A:4–30.65.

[5] The majority mistakenly states that defendant never objected to New Jersey's jurisdiction. (Op. at 264 n. 1, 781 *A.*2d at 1066 n. 1).

state of the children under the UCCJA. It provides a highly detailed visitation schedule and the rules for execution of that schedule. The order concludes by allocating the cost of air travel between New Jersey and Georgia for the children's visits with their father, a necessary corollary to New Jersey's custody and visitation jurisdiction under the Uniform Child Custody Jurisdiction Act, *N.J.S.A.* 2A:34-28 to -52 (UCCJA). The final operative provision of that order, paragraph 11, says:

Except as otherwise expressly set forth herein, the 1992 [Georgia] Judgment remains in full force and effect. Any modifications, supplementations, or enforcement of this Order or of the 1992 Judgment shall go forward before this Court.

The second order cited by the majority was entered by the same judge on April 25, 1995, in response to defendant's motion for visitation and plaintiff's cross-motion for arrears and future support. The divorce judgment incorporated the parties' agreement for defendant to pay $500 per month for each of their two children, a total of $1,000 per month as child support. The April 1995 order continued that support

in the full amount of $1,000 per month payable by a wage execution through the Department of Probation of the State of New Jersey, which shall contact the appropriate department in Georgia to secure the full and speedy effectuation of this provision.

I do not read that provision, continuing the same "full amount" of child support, but adding the interstate collection mechanism then available under RURESA (and now under UIFSA), as a modification of the prior support order. Providing for collection and payment through the New Jersey Probation Department was obviously incidental to enforcement of the Georgia child support order and consistent with the Georgia order allowing plaintiff to move with the children to New Jersey.

The April 1995 order also enforces the existing child support provision of the Georgia judgment, providing for various past due payments owing between the parties, including private school expenses, and requiring a Qualified Medical Child Support Order

to be entered pursuant to ERISA, 29 *U.S.C.A.* § 1169.[6]  Such an order was entered the same day.  The final operative paragraph of the April 1995 order provides: "[T]he Chancery Division of this Court shall retain jurisdiction over the subject matters addressed herein."  The "subject matters addressed herein" are the various existing child support provisions enforced or effectuated by the order.

In my view, the majority engages in unwarranted and unsupported speculation by adopting plaintiff's theoretical argument that the April 1995 order should be deemed to modify the Georgia judgment because after the older child is emancipated, child support for the younger child under the New Jersey Child Support Guidelines would be more than the $500 per child provided by the original Georgia order.  The assumption that New Jersey law and jurisdiction would then apply assumes the very conclusion that is disputed in this appeal, that is, that New Jersey will exercise jurisdiction and apply New Jersey law to modify the Georgia order.  Moreover, in light of the younger child's 1999 return to the physical custody of his father in Georgia, and defendant's representation that he does not seek child support from plaintiff in New Jersey, such speculation has no basis in fact.

---

[6] A "medical child support order" is defined under ERISA as an order which provides for child support with respect to a child of a participant under a group health plan or provides for health benefit coverage to such a child, is made pursuant to a State domestic relations law . . ., and relates to benefits under such plan,

[29 *U.S.C.A.* § 1169(a)(2)(B)(i).]

and

which creates or recognizes the existence of an alternate recipient's right to, or assigns to an alternate recipient the right to, receive benefits for which a participant or beneficiary is eligible under a group health plan. . . .

[29 *U.S.C.A.* § 1169(a)(2)(A)(i).]

Neither order changed the parties' respective responsibilities for the children's medical expenses.  The "qualified medical support order" merely qualified plaintiff as "an alternate recipient" to receive the children's medical benefits available through defendant's group health plan.

The third order cited by the majority is the consent order entered on August 18, 1999, by which the parties agreed that physical custody of Eric would be transferred from plaintiff in New Jersey to defendant in Georgia.[7] Four and one-half pages of that five and one-half page order provide in great detail for plaintiff's visitation with Eric, both in New Jersey and Georgia, including plaintiff's access to Eric's school and extracurricular activities in Georgia, the child's access to a therapist in New Jersey, and for the child's religious observances to be supported by defendant. The only modification to any aspect of the Georgia child support provisions may be found in paragraph 12 of the August 1999 order, which provides for defendant to pay all unreimbursed medical and dental expenses[8] for Eric instead of sharing such expenses equally with plaintiff as originally provided. Significantly, the order then continues:

> Except as set forth in paragraph 12, this order is not intended to address any financial issue, and both parties reserve all rights and arguments regarding any financial issue relating to either of the children's expenses which shall be retroactive to the applicable date, *e.g.*, the date the expense was incurred.

The 1999 order expressly preserves both the 1992 Georgia judgment and the subsequent Georgia and New Jersey custody and visitation orders and then provides that "[a]ny modifications, supplementation, or enforcement of any of these Orders or of this Order shall go forward before this Court."

---

[7] Because jurisdiction over child custody and visitation pursuant to the UCCJA is not premised upon the same rules as jurisdiction over child support under UIFSA, lawful exercise of jurisdiction to modify custody or visitation under the UCCJA is not determinative on the issue of jurisdiction to modify child support. There is no question that New Jersey has properly exercised jurisdiction over visitation and custody. However, by contrast with UIFSA, jurisdiction under the UCCJA does not require minimum contacts with the out-of-state parent, so long as notice and an opportunity to be heard are provided. *Genoe v. Genoe*, 205 *N.J.Super.* 6, 15, 500 *A.2d* 3 (App.Div.1985).

[8] The Georgia judgment provided for plaintiff to maintain dental insurance for the children as long as it was available; otherwise defendant would become responsible.

The majority concludes that these "three orders, . . . clearly and unequivocally, modify prior support obligations." (op. at 268, 781 A.2d at 1069.) It is neither clear nor unequivocal that they do so. As the motion judge who dismissed plaintiff's application to modify child support for lack of subject matter jurisdiction concluded, the Georgia support order has "never been changed, altered or challenged"—the only minor modification having been in the 1999 order for defendant to pay all rather than half of the children's unreimbursed medical expenses.

The majority also appears to view the last quoted provisions of each of the three orders as a declaration that New Jersey now has "exclusive, continuing jurisdiction" to modify child support. That brings me to the second question before the court: whether, if any of the New Jersey orders are deemed to have modified the Georgia child support provision, or to have declared the power and intention to do so, such an order would have been "pursuant to" (or consistent with) applicable law. I would answer that question in the negative, because *N.J.S.A.* 2A:4–30.72a describes the issuance of "a support order consistent with the law of this state" as the basis for continuing, exclusive jurisdiction.

I have considered whether, if the concluding paragraphs of the 1994, 1995 and 1999 orders constitute broad determinations that the New Jersey court has subject matter jurisdiction to modify child support in the future, which defendant did not appeal,[9] those determinations are the law of the case. But the law-of-the-case doctrine is discretionary, and for the other reasons set forth in this opinion, it would not be in the interest of justice to apply that doctrine here. *See State v. Reldan,* 100 *N.J.* 187, 205–07, 495 A.2d 76 (1985); *Brown v. Brown,* 323 *N.J.Super.* 30, 39, 731 A.2d 1212 (App.Div.), *certif. denied,* 162 *N.J.* 199, 743 A.2d 851 (1999).

With respect to a second state's authority to modify a child support order, UIFSA includes no affirmative provision, unlike the

---

[9] It would be unreasonable, in my view, to require a party to appeal from a *sua sponte* provision announcing the court's future intention, when no operative provision of the order would otherwise prompt an appeal.

FFCCSOA. The FFCCSOA expressly requires, as a condition of any state court's authority to modify a child support order issued by a court of another state, that either both parties and the child have left the first state, or that both parties have filed a written consent to the second state's jurisdiction. 28 *U.S.C.A.* § 1738B(e)(2). Neither condition is satisfied in this case.

If UIFSA does not provide an unambiguous resolution of jurisdiction to modify the Georgia child support order in this case, the FFCCSOA (§ 1738B(e)(2)) should control. And if the concluding paragraphs of the 1994, 1995, or 1999 New Jersey orders are deemed to declare New Jersey's jurisdiction to modify child support, such declarations would have been beyond the court's limited modification jurisdiction under the FFCCSOA or UIFSA.[10] Commentators have interpreted both UIFSA and FFCCSOA as providing very limited jurisdiction for one state to modify a child support order issued by another state. *E.g.*, Patricia W. Hatamyar, *Interstate Establishment, Enforcement, and Modification of Child Support Orders*, 25 *Okla. City U.L.Rev.* 511, 515–16 (2000); Angela R. Arkin, *Jurisdiction and the Interstate Child: How to Avoid the Avoidable Complications*, 26 *Colo. Law.* 75, 76 (1997); Joel R. Brandes & Carole L. Weidman, *Full Faith and Credit to Child Support Orders*, 214 *N.Y. L.J.* 36 (1995). I therefore read the concluding paragraphs of the 1994, 1995, and 1999 orders more narrowly, consistent with both statutes, to hold that the New Jersey court will continue to enforce the Georgia judgment and to address custody and visitation issues, including the costs associated with interstate visitation.

Several orders were entered thereafter, including the order appealed from.[11] On January 4, 2000, the judge dismissed plain-

---

[10] There is nothing in the record before us to suggest that plaintiff moved under *N.J.S.A.* 2A:4–30.74c for such a determination, or that UIFSA's prerequisites for such an application existed.

[11] Plaintiff's original notice of appeal identifies the January 4, 2000 order dismissing plaintiff's applications for lack of jurisdiction. Plaintiff's amended

tiff's motion to require defendant to contribute to Julia's college expenses and to "set" future child support for Eric [12] for lack of jurisdiction, preserving "issues of enforcement" for a separate order.

Next, on February 24, 2000, in response both to plaintiff's motion seeking enforcement and reimbursement of certain expenses allegedly due as child support and to defendant's cross-motion with respect to visitation issues,[13] the judge provided detailed terms and conditions for plaintiff's visitation with Eric, reserved on plaintiff's application for enforcement of prior support-related obligations, and reserved on the issue of plaintiff's obligation to pay child support for Eric (not sought by defendant in New Jersey).   Finally, on June 5, 2000, the judge ruled on plaintiff's previously reserved claims for reimbursement of various child-related expenses, denying almost all the relief sought and awarding defendant a counsel fee for the motions.

None of these last three orders modified the Georgia judgment; all were consistent therewith.   Thus the Georgia court has not lost the power to exercise its continuing, exclusive jurisdiction over child support by virtue of *N.J.S.A.* 2A:4–30.72b.   There being no question that the Georgia divorce judgment included the first child support order, thereby establishing Georgia's continuing, exclusive jurisdiction, the New Jersey tribunal must recognize Georgia's jurisdiction.   *N.J.S.A.* 2A:4–30.72d.

Moreover, there is no evidence in the record that plaintiff has ever sought to register the Georgia judgment in New Jersey in

---

notice of appeal identifies portions of two subsequent orders, none of which raise any other substantive issues.

[12] The record does not include the actual motions, and I infer the content and source of each application from the introductory language of the order itself.

[13] The record does not include the actual motions, and once again I infer the content and source of each application from the introductory language of the order itself.

accordance with *N.J.S.A.* 2A:4–30.112,[14] which appears to require registration as a pre-requisite to seeking modification, but not enforcement, of a child support order. *Compare N.J.S.A.* 2A:4–30.104.[15] Neither party addresses those provisions of UIFSA concerning registration of a foreign judgment, and I do not rest my decision on that ground. But the difference between the permissive language of *N.J.S.A.* 2A:4–30.104 and the mandatory language of *N.J.S.A.* 2A:4–30.112 is a further indication that the uniform law intends to set a very different standard for jurisdiction to modify than for jurisdiction to enforce a child support order.

My interpretation and application of UIFSA to the facts and procedural history of this case are consistent with those few New Jersey cases which have addressed UIFSA. While none of those cases is determinative on the issue before us, none supports the majority's conclusion that New Jersey has subject matter jurisdiction over plaintiff's application to modify child support as set forth in the Georgia divorce judgment.

In *Youssefi v. Youssefi,* 328 *N.J.Super.* 12, 744 *A.*2d 662 (App. Div.2000), unlike the facts before us, the parties and the child had all moved out of New Jersey when the mother applied to a New Jersey court to enforce child support arrears and other obligations originally ordered by the New Jersey court. No other tribunal

---

[14] *N.J.S.A.* 2A:4–30.112 provides:

> *A party or support enforcement agency seeking to modify, or to modify and enforce,* a child support order issued in another state *shall register* that order in this State in the same manner provided in sections 40 through 43 of this act if the order has not been registered. A complaint, petition or comparable pleading for modification may be filed at the same time as a request for registration, or later. The pleading must specify the grounds for modification.
>
> (emphasis added).

[15] *N.J.S.A.* 2A:4–30.104 provides:

> A support order or an income-withholding order issued by a tribunal of another state *may be registered* in the State *for enforcement.*
> (emphasis added).

had ever issued a child support order, and we held that New Jersey retained jurisdiction to enforce its order.

In *Sharp v. Sharp,* 336 *N.J.Super.* 492, 765 *A.*2d 271 (App.Div. 2001), we held that lack of personal jurisdiction over the California-resident father precluded a New Jersey court from entertaining the New Jersey-resident mother's action seeking to allocate their child's college costs between the parents. The parties were divorced in California in 1982, and the judgment of divorce incorporating the parties' agreement for child support was silent on the subject of the then two-year-old child's future college expenses. After the mother and child moved to New Jersey, child support was modified several times through proceedings brought by the mother under RURESA. Although *Sharp* was decided on the basis of lack of *in personam* jurisdiction, Judge Fall noted that because "only one tribunal has issued a child support order, that tribunal controls and it has continuing exclusive jurisdiction over the issue of child support." *Id.* at 504, 765 *A.*2d 271. *Sharp* is distinguishable because New Jersey had acted only as an initiating tribunal relative to child support; nevertheless, dictum in that case is consistent with the motion judge's decision here that New Jersey lacks subject matter jurisdiction.[16]

In *Teare v. Bromley,* 332 *N.J.Super.* 381, 753 *A.*2d 764 (Ch.Div. 2000), in an application by the New Jersey-resident mother against the Maryland-resident father to continue child support for the parties' college student child, the Family Court Judge held that where a New Jersey court issued the original child support order and modifications thereto, a more recent Maryland order did not deprive New Jersey of continuing, exclusive jurisdiction. While the reasoning of that court is not entirely clear, and the court appears to have given substantial weight to the fact that New Jersey remained the home state of the child, the decision is not inconsistent with my conclusion in this case that Georgia,

---

[16] The case also suggests that New Jersey may not have personal jurisdiction over defendant.

where the original child support order was issued, has continuing, exclusive jurisdiction.

In *Peace v. Peace*, 325 *N.J.Super.* 122, 737 *A.*2d 1164 (Ch.Div. 1999), the parties were New Jersey residents when they separated and entered into a consent order respecting child support. The father thereafter moved to Nevada, and the parties signed a written agreement resolving all of the issues between them, including child support consistent with the prior New Jersey consent order. A divorce judgment thereafter was entered in Nevada, incorporating the parties' written agreement respecting child support. The mother and child remained in New Jersey, where the mother obtained an order increasing child support. In response to her second application for an increase, the father objected to New Jersey's exercise of jurisdiction, but the application was denied on other grounds. The decision arose on the mother's third application for an increase in child support. The court defined the issue: "whether divorce proceedings initiated in Nevada somehow divested the New Jersey court of authority to review and modify support orders properly entered here previously." *Id.* at 124, 737 *A.*2d 1164. The Family Part Judge determined, pursuant to *N.J.S.A.* 2A:4–30.72a(2), that where the mother and child remained in New Jersey, New Jersey was not deprived of its continuing, exclusive jurisdiction over child support, absent written consent of both parties to Nevada's jurisdiction. However, the judge also reasoned in the alternative that if both states had continuing, exclusive jurisdiction under UIFSA, the controlling order must be that order issued by the tribunal in the child's home state, citing *N.J.S.A.* 2A:4–30.74b(2) and –30.74d.

As I have explained, New Jersey's orders respecting child support are properly characterized not as modification orders, but as enforcement orders, which do not deprive Georgia of its continuing, exclusive jurisdiction under *N.J.S.A.* 2A:4–30.72b and –30.72d or their Georgia counterparts. This case therefore is not governed by *N.J.S.A.* 2A:4–30.74, which purports to provide tie-breaking rules for determining which tribunal's orders shall "be

recognized"—and thus which tribunal will continue to have jurisdiction—when two or more states claim jurisdiction based upon having issued child support orders.[17]

Recent decisions of several appellate courts are consistent with my conclusions that Georgia has continuing exclusive jurisdiction over child support both for Julia and for Eric, including the claim for contribution to Julia's college expenses, and that New Jersey does not. *E.g., McCarthy v. McCarthy*, 785 *So.*2d 1138, 1140–41 (Ala.Civ.App.2000)(Alabama lacked subject matter jurisdiction to modify Georgia child support order where father remained a Georgia resident after mother moved with children to Alabama in 1988; father could collaterally attack Alabama order in contempt proceeding); *Brickner v. Brickner*, 723 *N.E.*2d 468, 473 (Ind.Ct. App.), *transfer denied*, 735 *N.E.*2d 235 (Ind.2000)(Wisconsin lacked subject matter jurisdiction to modify an Indiana divorce judgment and child support order where father remained an Indiana resident, despite mother's and child's twenty-year residence in Wisconsin); *Harbison v. Johnston*, 28 *P.*3d 1136, 1142–43 (N.M.Ct.App.2001)(where father had remained a Texas resident, and mother moved to New Mexico, New Mexico lacked subject matter jurisdiction over mother's application to modify a Texas child support judgment, but retained subject matter jurisdiction to enforce that judgment); *Daknis v. Burns*, 278 *A.D.*2d 641, 719 *N.Y.S.*2d 134, 135–36 (2000)(New York lacked subject matter jurisdiction over New York custodial father's application to modify Pennsylvania child support order where mother remained a Pennsylvania resident); *State ex rel. Harnes v. Lawrence*, 140

---

[17] *N.J.S.A.* 2A:4–30.74 is inherently circular, in that it determines the tribunal with continuing, exclusive jurisdiction according to the one that issued "the controlling order," *see N.J.S.A.* 30.74d, but determines the tribunal with the controlling order according to the one that "would have continuing, exclusive jurisdiction." *See* 30.74b(1), (2), and (3). Virtually the same circular provision appears in the FFCCSOA, 28 *U.S.C.A.* § 1738B(f), as amended by Pub.L. 104–93, § 322(10), at the same time the states were ordered to enact UIFSA. *Id.* § 321. But the FFCCSOA also includes § 1738B(e)(2), discussed above.

*N.C.App.* 707, 538 *S.E.*2d 223, 227–28 (2000)(North Carolina lacked subject matter jurisdiction to modify a 1982 New Jersey divorce judgment and child support order at the request of the North Carolina resident father, where mother and child remained in New Jersey; New Jersey judgment is the controlling order pursuant to UIFSA and the FFCCSOA); *State ex rel. Freeman v. Sadlier,* 586 *N.W.*2d 171, 173 (S.Dak.1998)(where father was a resident of Utah, whose court had issued the original child support order, South Dakota court had enforcement jurisdiction but lacked subject matter jurisdiction to modify child support, and the improper South Dakota modification order could be collaterally attacked in the contempt proceeding); *In re Marriage of Erickson,* 98 *Wash. App.* 892, 991 *P.*2d 123, 126 (2000)(Washington lacked subject matter jurisdiction over resident mother's application to modify a California divorce judgment and child support order where father remained a California resident). *Cf. Connell v. Woodward,* 235 *Ga.App.* 751, 509 *S.E.*2d 647, 650 (1999)(where father remained a Florida resident, and mother who had moved to Georgia with the child had sought to modify the Florida child support order, Florida retained continuing, exclusive jurisdiction and a Georgia order increasing child support—and holding father in contempt—was reversed).

While not an exhaustive survey of the states, these decisions are consistent with the expressed goal of UIFSA "to make uniform the law with respect to the subject of this act"—the subject being jurisdiction over child support for multi-state families. The respect for prior judgments and child support orders of a sister state that is evidenced by these cases is also consistent with the full faith and credit required to be given to child support orders under FFCCSOA.

Recent decisions of several state courts which have found jurisdiction to modify another state's child support order are distinguishable, either because all of the parties and the children had left the state where the original child support order was

entered, *see N.J.S.A.* 2A:4–30.72a(1); [18] or because the parties had effectively consented to the second state's jurisdiction, *see N.J.S.A.* 2A:4–30.72a(2).[19]

A custodial parent in New Jersey, such as plaintiff, is not without a mechanism for modifying child support ordered by another state's court. Plaintiff retains the right under UIFSA to file a claim in New Jersey as the "initiating tribunal," *N.J.S.A.* 2A:4–30.73(a), asking that it forward her request to modify the original support order to Georgia as the "responding" tribunal, *N.J.S.A.* 2A:4–30.80(a)(1).[20] *See Sharp v. Sharp, supra,* 336

---

[18] *E.g., State, Child Support Enforcement Div. v. Bromley,* 987 P.2d 183, 189 (Alaska 1999)(Alaska had jurisdiction to modify Maine child support order where neither party nor child remained in Maine and father had moved his residence to Alaska); *Jurado v. Brashear,* 782 So.2d 575, 579–80 (La.2001)(Louisiana court retained jurisdiction to enforce but not to modify its support order after parties and child had all left Louisiana); *Groseth v. Groseth,* 257 *Neb.* 525, 600 *N.W.*2d 159, 166 (1999)(Massachusetts court, which issued divorce judgment including child support provisions, "lost continuing, exclusive jurisdiction to modify the child support provisions" once the entire family left Massachusetts); *LeTellier v. LeTellier,* 40 *S.W.*3d 490, 493 (Tenn.2001)(Tennessee had jurisdiction to modify District of Columbia child support order where all parties and child had moved from District of Columbia).

[19] *Stout v. Stout,* 207 *W.Va.* 580, 534 *S.E.*2d 776, 780 (2000)(giving full faith and credit to an Indiana order modifying a child support order originally issued in West Virginia, after finding that the parties' written agreement appeared to consent to Indiana's jurisdiction); *Hoehn v. Hoehn,* 716 *N.E.*2d 479, 481–83 (Ind.Ct.App.1999)(Indiana retained jurisdiction where husband and wife "had previously agreed to the application of Indiana law" by filing joint petitions to modify child support in Indiana courts which were approved by the court).

[20] The parties did not raise the issue of Julia's separate cause of action, if any, in the Family Part, nor have they raised it on appeal. *See Blum v. Ader,* 279 *N.J.Super.* 1, 4, 652 *A.*2d 176 (App.Div.1994); *Johnson v. Bradbury,* 233 *N.J.Super.* 129, 136, 558 *A.*2d 61 (App.Div.1989). *But see Martinetti v. Hickman,* 261 *N.J.Super.* 508, 512–13, 619 *A.*2d 599 (App.Div.1993):

It should not be necessary ... for the child herself to proceed against either parent.... So unseemly a course should be avoided wherever possible. It is rendered largely unnecessary by recognizing the right of either parent to proceed on behalf of an unemancipated child for the provision of a fair share of her needs, including educational expenses.

*N.J.Super.* at 505, 765 *A.*2d 271. I recognize that this procedure
is likely to prove futile to plaintiff's claim for contribution to Julia's
college expenses, because Georgia substantive law applies to a
proceeding in which it is the "responding tribunal," *see O.C.G.A.*
§ 19–11–111 and *N.J.S.A.* 2A:4–30.79a, and under Georgia law it
appears that a court may not order a parent to contribute to the
college education of a child who has reached the age of majority.

By contrast, if New Jersey had jurisdiction over modification of
child support, New Jersey law would apply. *N.J.S.A.* 2A:4–30.79.
New Jersey has a strong public policy, expressed in legislation,
*N.J.S.A.* 2A:34–23a(5), and in the common law, favoring parental
responsibility for the reasonable costs of appropriate higher edu-
cation, irrespective of the child's having reached the legal age of
majority. *See Newburgh v. Arrigo,* 88 *N.J.* 529, 543–45, 443 *A.*2d
1031 (1982); *see also Finger v. Zenn,* 335 *N.J.Super.* 438, 443, 762
*A.*2d 702 (App.Div.2000), *certif. denied,* 167 *N.J.* 633, 772 *A.*2d 935
(2001); *Raynor v. Raynor,* 319 *N.J.Super.* 591, 615, 726 *A.*2d 280
(App.Div.1999); *Hudson v. Hudson,* 315 *N.J.Super.* 577, 584–85,
719 *A.*2d 211 (App.Div.1998); *Black v. Walker,* 295 *N.J.Super.* 244,
256, 684 *A.*2d 1011 (App.Div.1996); *Blum v. Ader,* 279 *N.J.Super.*
1, 4, 652 *A.*2d 176 (App.Div.1994); *Martinetti v. Hickman,* 261
*N.J.Super.* 508, 512, 619 *A.*2d 599 (App.Div.1993); *Weitzman v.
Weitzman,* 228 *N.J.Super.* 346, 355–57, 549 *A.*2d 888 (App.Div.
1988), *certif. denied,* 114 *N.J.* 505, 555 *A.*2d 623 (1989).

Under Georgia law, on the other hand, a court may not order a
parent to contribute to a child's college costs unless the obligation
was voluntarily undertaken by the parent. Compare *N.J.S.A.*
2A:34-23a(5) with *O.C.G.A.* § 19-7-2, which provides:

> It is the joint and several duty of each parent to provide for the maintenance,
> protection, and education of his or her child until the child reaches the age of
> majority, dies, marries, or becomes emancipated, whichever first occurs, except as
> otherwise authorized and ordered pursuant to subsection (e) of Code Section 19–6–
> 15 and except to the extent that the duty of the parents is otherwise or further
> defined by court order.

Further, *O.C.G.A.* § 19–6–15(e) limits the duty of support to a
child who has not yet reached the age of 18 or otherwise become

emancipated, *O.C.G.A.* § 39–1–1(a), unless the child has not yet completed secondary school; but in no event does the obligation continue once the child reaches the age of 20.

In a recent decision on appeal of a jury verdict in a divorce trial, the Supreme Court of Georgia approved a trial judge's amendment of the jury verdict "so as to delete the award of college expenses from the final decree." *Brandenburg v. Brandenburg,* 274 *Ga.* 183, 185 n. 1, 551 *S.E.*2d 721, 722 n. 1 (2001). In reaching that result, the Court cited *O.C.G.A.* § 19–7–2 and its decision in *Coleman v. Coleman,* 240 *Ga.* 417, 240 *S.E.*2d 870, 874–75 (1977)(invalidating a judgment requiring the father to fund an education trust fund during the child's minority, because its use was "contemplated clearly [to] extend beyond the age of 18"). Similarly, in *Lane v. Titus,* 259 *Ga.* 264, 379 *S.E.*2d 521 (1989), the Georgia Supreme Court reversed a judgment which resulted from a jury verdict modifying the father's obligation to pay for a child's college expenses. The court limited the obligation to that which the father had assumed voluntarily by contract, finding that no such obligation "could have otherwise been imposed upon [him]." *Id.* at 522.

Thus a parent's obligation to contribute to a child's college education involves a clear conflict of substantive law between New Jersey and Georgia. I have therefore considered whether the conflict between New Jersey and Georgia law justifies New Jersey's exercise of jurisdiction in this case. I conclude that the exercise of subject matter jurisdiction, based upon a preference for New Jersey substantive law, but contrary to UIFSA and the FFCCSOA, is unjustified.[21] For this court to base jurisdiction on such a foundation would represent precisely the sort of territorial

---

[21] *Black v. Walker,* 295 *N.J.Super.* 244, 684 A.2d 1011 (App.Div.1996), is distinguishable. In a pre-UIFSA case in which neither subject matter nor *in personam* jurisdiction was challenged, but only choice of New Jersey versus New York substantive law on a parent's duty to contribute to college expenses, we held New Jersey's interest sufficiently dominant to apply New Jersey law to compel the New York father's estate to contribute.

approach that creates conflicting orders-the target of UIFSA and the FFCCSOA.

If New Jersey proceeds to assert and exercise jurisdiction to modify the Georgia child support order that has remained in force to this day, any attempt to enforce that order in Georgia would present that state's court with potentially conflicting orders. Pursuant to *O.C.G.A.* § 19–11–114d, Georgia's version of *N.J.S.A.* 2A:4–30.72d, the Georgia court need only recognize New Jersey as having continuing exclusive jurisdiction if New Jersey has issued a child support order pursuant to, and presumably consistent with, UIFSA. Fortunately, we are not faced here with a choice between conflicting orders. Rather, consistent with the underlying purposes of UIFSA, we are in a position to avoid potentially conflicting child support orders by affirming the Family Part order of dismissal, declining jurisdiction in favor of Georgia.

Finally, while I agree with the majority that there is "a substantial benefit in vesting one court with jurisdiction to deal with all issues concerning one family," we can only do so consistent with applicable law, UIFSA and the FFCCSOA. The "substantial benefit" intended by these uniform acts, it appears, is to avoid conflicting substantive orders and conflicting orders respecting jurisdiction, rather than necessarily to avoid splitting jurisdiction between the states. Moreover, the rationale employed by the majority—having one tribunal deal with all issues concerning one family—appears in this case to favor the continuing, exclusive jurisdiction of the courts of Georgia, where the only minor child, Eric, now resides with his father.[22]

For these reasons, I would affirm the order dismissing the application to set child support for Eric and for contribution to Julia's college expenses for lack of subject matter jurisdiction.

---

[22] Of course, if Eric remains a resident of Georgia, the reasoning of this opinion suggests that Georgia law would apply its law to any application by defendant for plaintiff to contribute to Eric's college expenses. One can only hope that the parties will recognize the necessity for reaching an agreement now that will serve the best interests of both Eric and Julia.